[Filed 1888.]

ALICE B. DURBIN, RESPONDENT, *v.* OREGON RAILROAD AND NAVIGATION COMPANY, APPELLANT.

RAILROAD COMPANIES — INJURIES AT CROSSING — CONTRIBUTORY NEGLIGENCE. — Plaintiff attempted to pass a railroad crossing with a team and wagon. She had just observed the passenger train pass, and was not expecting any other train at that time, although she had seen a freight train standing on the track, headed that way, in the town which she had just left.   The railroad at that point cuts through a hill, so as to obstruct the view from the wagon-road.   She was familiar with the crossing, having crossed there many times before, and had always used great care in looking for trains.

On this occasion she did not stop to look or listen; her team came into collision with a passing engine, and one horse was killed and the wagon was overturned. *Held,* that plaintiff was guilty of contributory negligence.

APPEAL from the Circuit Court for Baker County.

*Olmstead & Anderson, Dolph, Bellinger, Mallory,* and *Simon,* for Appellant.

*Hyde & Hyde,* and *A. J. Lawrence,* for Respondent.

LORD, C. J.—This was an action to recover damages for the alleged negligence of the defendant in running a train of cars against the horses hitched to the wagon in which the plaintiff was crossing the defendant's track. At the trial, when the plaintiff rested her case, the defendant moved for a nonsuit, which the court overruled, and the defendant excepted. It is enough to say that a verdict was returned for the plaintiff, and that the present appeal brings up the judgment rendered thereon, and the record of the proceedings upon the trial.

The main contention is confined to the error assigned, —in not granting the motion for a nonsuit. This is claimed upon the ground that, from the evidence submitted by the plaintiff, it clearly appeared that it was the negligence of the plaintiff which occasioned the collision and caused her injury. The evidence of the plaintiff shows that she and Mrs. Huntington, and a child of the latter, left the town of Huntington with a team and express-wagon to visit some friends in the country, and that after they had traveled west a couple of miles or so, the west-bound passenger train came along and passed them; that as she left Huntington she saw standing on the track a freight train headed west, to which engines were attached, with steam up, but that, after the passenger train had passed, she thought nothing more of any trains coming; that in driving around the point of the hill or moun-

tain through which the railroad is cut, and across which the county road runs diagonally, and just as she was crossing the railroad track, and the front feet of the horses had reached the rail, she saw the engine approaching, not more than the length of a rail distant; that she tried to back the horses, but that before she could make them back, the train struck the horses, killing one and overturning the wagon. Her testimony also shows that she had traveled over the crossing many times a year for several years, was familiar with the place and its surroundings, knew the view was obstructed on account of the intervening hill, and regarded the crossing, under the circumstances of its situation, as so dangerous that she had always before stopped and listened, and if she did not hear the train, she or some companion for her went forward and looked up the track before venturing to cross it.   She says, in reply to the inquiry whether "she had ever taken any pains to find out whether trains were passing," that "I have got down when I was passing alone and tied my horses, and went and looked, and at other times, if any one was with me, I got them to hold the team, and went and looked, or got them to go and look for me," and that she "always regarded it as a dangerous place."   "The reason I did not get down and examine the track this time as I had done before was, that the passenger train had gone by, and I was not expecting any train from Huntington, and I knew it was not time for the helper to go down until the passenger train had got to Weatherby."

It is clear and undisputed that neither the plaintiff nor Mrs. Huntington listened, on approaching the crossing, to find out whether a train was coming, notwithstanding they knew the view of the track was obstructed, and that the crossing, by reason of the nature of the cut, and the location of the county road across it, was more than ordinarily dangerous, but drove directly on the track without

8          Durbin *v.* Oregon R. R. etc. Co.     [Sup. Ct.

Opinion of the Court — Lord, C. J.

thinking anything about it, or observing the usual pre-
cautions required for safety, because the passenger train
had passed them, and the plaintiff did not think any
other train was coming. There is no doubt, if she had
listened, she could have heard the approach of the train,
and avoided the accident. But it is sought to discrimi-
nate this case from the general rule applied to travelers in
approaching railroad crossings, and to excuse the failure
or neglect of the plaintiff to listen, on the ground that
the evidence showed that she knew the time of the run-
ning of the trains, and as the passenger train had passed
them, she knew no other train would be due for some time,
and consequently the fact whether her failure to listen
under the circumstances was such contributory negli-
gence as should defeat her recovery was for the jury to
decide.

The law assumes that there is danger at railroad cross-
ings, which, to avoid, requires the exercise of care and
prudence commensurate with the nature of the place or
risk involved. It is laid down by the courts and text-
writers, when one approaches a point upon the highway
crossed by a railroad track, it is his duty, whether on foot
or in a wagon, to exercise a care for his own safety, and
especially to look and listen before attempting to cross it.

"The rule is well established," said Miller, J., "that it
is the bounden duty of a traveler approaching a railroad
crossing, before he passes over the same, to exercise a
proper degree of care and caution, and to make a vigilant
use of his eyes and ears, for the purpose of ascertaining
whether a train is approaching; and if by proper use of
his faculties he could have discovered the train and
escaped injury, and fails to do so, he is chargeable with
contributory negligence, and no recovery can be had."
(*Salter* v. *Railroad Co.,* 75 N. Y. 317.)

"He must assume," says Mr. Beach, "that there is danger, and act with ordinary prudence and circumspection upon the assumption. The requirements of the law, moreover, proceed beyond the featureless generality that one must do his duty in this respect, or must exercise ordinary care under the circumstances. The law defines precisely what the term 'ordinary care under the circumstances' shall mean in these cases. In the progress of the law in this behalf, the question of care at railway crossings as affecting the traveler is no longer a question for the jury. The quantum of care is exactly prescribed as matter of law. In attempting to cross, the traveler must listen for signals, notice signs put up as warnings, and look attentively up and down the track. A multitude of decisions of all courts enforce this reasonable rule." (Beach on Contributory Negligence, sec. 63, and authorities cited in note, and also sec. 9.) Nor will the fact that a train is behind time relieve the traveler of the duty of care and caution; railroad companies have the right to run trains at all times, and those having occasion to cross their tracks are entitled to no exemption from care and vigilance because trains are irregular or extra trains are put on.

"Assume in this case," said Harris, J., "that it was negligence in the railroad company to be behind time, and will this in law excuse the defendant from observing care on his part? In my opinion it will not. Such a rule would be extremely dangerous, and there would be much difficulty in its application. It may be that those who live in the immediate vicinity of railroads, and who frequently cross them, may, when they suppose a train has just passed, be less careful, and this may grow into a habit, or they may consult time-tables, and from them reason that there can be no locomotive near, and act without regard to care; but if they do so, in

my opinion they act at their peril. They will be charged with negligence in case they rush on the track without looking, or trying in a proper way to ascertain the fact whether danger is near, and they will not be permitted to recover damages for any injury they sustain." (*Dascomb* v. *Railroad Co.*, 27 Barb. 226.)

So that it seems that though a person or traveler may know the usual time of the running of different trains, from the fact that they may know that a train has passed, and that another train will not be along for some time according to their information or the time-table, it does not relieve him of the duty of observing care and prudence, or of using his faculties when he approaches and attempts to cross a railroad track. The law requires of him to make a reasonable use of his senses, and if the view of the track is obstructed, he must use his sense of hearing, and if he neglects to do so, and a collision results, he suffers by consequence of his own negligent act, and is not entitled to recover. He who fails to exercise this precaution when there are no circumstances to disturb his judgment, or impede his action at the time, is not using ordinary care.

It has been said: "The track itself is a warning of danger, and I think it must be laid down as a principle of law that persons about to cross a railroad track are bound to recognize the danger, and to make use of the sense of hearing as well as of sight, and if either cannot be rendered available, the obligation to use the other is the stronger, to ascertain, before attempting to cross it, whether the train is in dangerous proximity; and if they neglect to do this, but venture blindly upon the track without any effort to ascertain whether a train is approaching, it must be at their own risk. Such conduct is of itself negligence, and should be so pronounced by the

courts as matters of law." (Christian, J., in *Railroad Co.* v. *Miller*, 25 Mich. 290.)

" As the plaintiff could not use his eyes with effect," said Crockett, J., " it was incumbent on him, as a person of ordinary prudence, to make the best use of his ears, which he could not do while his team was in motion. Upon the plaintiff's statement of the facts, we hold that he was guilty of contributory negligence in failing to stop his team to listen for an approaching train." (*Flemming* v. *Railroad Co.*, 47 Cal. 256.)

"But aside from this fact," said Field, J., "the failure of the engineer to sound the whistle or ring the bell, if such were the fact, did not relieve the deceased from the necessity of taking ordinary precautions for her safety. Negligence of the company in these particulars was no excuse for negligence on her part. She was bound to listen and to look before attempting to cross the railroad track, in order to avoid an approaching train, and not to walk carelessly into the place of possible danger. Had she used her senses, she could not have failed both to hear and see the train which was coming. If she omitted to use them, and walked thoughtlessly upon the track, she was guilty of culpable negligence, and so far contributed to her injuries as to deprive her of any right to complain of others." (*Railroad Co.* v. *Houston*, 95 U. S. 697.)

"A railroad crossing is a place of danger, and common prudence requires that a traveler on the highway as he approaches one should use the precaution of looking to see if a train is approaching. If he fails to do so, the general knowledge and experience of men at once condemn his conduct as careless." (*Allen* v. *Railroad Co.*, 105 Mass. 79.)

Again, it is said that a traveler should always approach a railway crossing under the apprehension that a train is

liable to come at any moment; and while he may presume that those in charge of it will obey the law by giving the signals, the law will nevertheless require that he obey the instincts of his self-preservation, and not thrust himself into a situation which, notwithstanding the failure of the railroad, he might have avoided by the careful use of his senses. (*Railroad Co.* v. *Butler*, 2 N. E. Rep. 138. See also *Railroad Co.* v. *Richter*, 34 N. J. L. 180; note and case cited on page 226, 2 Am. & Eng. R. R. Cas.; *Payne* v. *Railway Co.*, 13 Lea, 522; *Scharfuth* v. *Railway Co.*, 62 Iowa, 624; *Heize* v. *Railway Co.*, 71 Me. 636; *Railroad Co.* v. *Beale*, 73 Pa. St. 504; *Railroad Co.* v. *Clarke Com.*, 73 Me. 168; *Haas* v. *Grand R. R. Co.*, 47 Mich. 401; *Tucker* v. *Duncan*, 9 Fed. Rep. 867; *Railroad Co.* v. *Adams*, 33 Kan. 427; *Railroad Co.* v. *Ritchie*, 102 Pa. St. 425; 9 Am. & Eng. R. R. Cas. 261; 1 Thompson on Negligence, 424, 426, and cases cited.)

It thus appears to be a duty imposed by the law upon a person about to cross a railroad to use his eyes and ears,—to look out for sign-boards and signals, and to listen for bell and whistle,—and if the view of the road is obstructed, it does not relieve him of the obligation to listen and ascertain if he can whether there is an approaching train. Nor will the fact that the train is behind time (*Salter* v. *Railroad Co.*, 75 N. Y. 273; *State* v. *Railroad Co.*, 47 Md. 76), or that it was a special train (*Schofield* v. *Railroad Co.*, 114 U. S. 615), or the failure of the railroad to give the signal of its approach at the crossing (see case *supra*), excuse the non-performance of this duty.

In many of the cases, the measure of duty goes to the extent of requiring the traveler to stop, in order to look or listen, but he is not required to get out of his wagon, and go forward on foot, for the purpose of looking (*Stakus* v. *Railroad Co.*, 79 N. Y. 467; *Davis* v. *Railroad Co.*, 47 N. Y. 400; *Railroad Co.* v. *Wright*, 80 Md. 182), unless

·Oct. 1888.]  Durbin *v.* Oregon R. R. etc. Co.          13

Opinion of the Court — Lord, C. J.

there are some particular circumstances requiring it.
(*Railroad Co.* v. *Beale,* 73 Pa. St. 509.)   Now, the plaintiff
was a competent person to take care of herself, was fa-
miliar with the road and its intersections with the rail-
road, and fully understood, from the obstructed view, the
danger and risk incurred in attempting to cross it with-
out listening.   There is no pretense that her team was
or became unmanageable or unduly excited, or that there
were any circumstances embarrassing or perturbing her
judgment, or that she was in the presence of any entan-
gling influences or conditions to perplex or confuse her
mind.   She was in the full possession of all her faculties,
and if she had listened, could have heard the train, yet,
relying on the fact that the passenger train had passed,
and that no other train was due for some time, she
relaxed her vigilance, and drove on the track, and in
collision with the train.   "If the obstruction had been
such," said Johnson, J., "as to prevent her from seeing
the track or train, then, in the exercise of ordinary care,
she should have listened for the train."   (*Railroad Co.* v.
*Adams,* 33 Kan. 431.)   Upon this state of facts, what
doubtful or qualifying circumstances does the conduct of
the plaintiff present which excuses her from the plain
consequences of her negligent acts?   The only duty which
the law imposed for her own safety, as well as the lives
of passengers on trains, she neglected and disregarded
under circumstances which demanded the exercise of
prudence and caution.

It is true that negligence is ordinarily a question of
fact for the jury to determine, from all the circumstances
of the case, and that the cases where a nonsuit is allowed
are exceptional, and confined to those, as here, where the
uncontradicted facts show the omission of acts which the
law adjudges negligent.

In such cases, when the measure of duty is defined by law, then, says Mr. Beach, " a failure to attain the standard is negligence in law, and a matter with which a jury can properly have nothing to do. This is the principle upon which *Cogswell* v. *O. & C. R. R. Co.*, 6 Or. 417, was decided by Boise, J." (Beach on Contributory Negligence, sec. 163.)

We think, upon the undisputed facts of this case as made by the plaintiff, her own negligent act contributed to produce the injury which she sustained by the collision, and that the motion for nonsuit ought to have been allowed. It follows that the judgment must be reversed, with directions that a judgment for nonsuit be entered.