DWINAL P. ALLEN *vs.* MAINE CENTRAL RAILROAD COMPANY.

Sagadahoc. Opinion October 14, 1889.

*Railroad. Contributory negligence. Joint fault.*

A person cannot recover for injuries, caused by the negligence of others, to which he has contributed by his own negligence.

Where negligence of both parties contributes to the injury of either, the common law gives neither party damages for his injury, arising from their joint fault.

ON MOTION, by defendants to set aside the verdict as against law and evidence, and because of excessive damages.

This was an action on the case for the loss of the plaintiff's right hand, and other injuries while driving over a crossing of the Maine Central Railroad, on Pearl street, in Bath, August 20, 1888.

The jury rendered a verdict for the plaintiff for $7,500.

*Baker, Baker and Cornish,* for defendant.

On the morning of the accident the plaintiff starts from a point 134 feet west of the crossing. The crossing is a dangerous one. The road to it leads down a steep hill with the crossing at the foot. All view of the track from his starting point, and clear down to a point quite near the crossing is wholly cut off and he knows it. It has no gate or flagman and he knows it. From the nature of the ground, unless the traveler is watchful, a train, especially if coming from Bath, may start out upon him at any moment from behind the bank and mangle or kill him. He starts at train time, and he knows when he starts, that at that very moment, a regular train is about due at the crossing and will come from Bath,—not towards it. The clatter of his butcher cart down the hill will inevitably deaden and perhaps drown the sound of an approaching train, while the thick canvass cover peculiar to a butcher's cart, under and inside which he sits, will additionally obscure his view, and perhaps its flapping may still further dull the sound.

All this he knows, for he has passed over this same crossing with the same cart from 175 to 350 times in the six months immediately preceding the accident; but he also knows that about 53 feet west of the crossing he can begin to get a view south of the crossing, and that, from a point some distance west of the crossing and continuously from there to the crossing itself there is an unobstructed view of the whole track for half a mile in the direction of the expected train, and that by stopping the speed and noise of his cart anywhere beyond that point, and either looking or listening he must both see and hear any train near enough to be dangerous; or that even by looking without stopping, if he were at prudent speed, he would still have ample time and space to stop his manageable horse short of the fatal rails.

In such cases and in such surroundings we say:

1st.  That the plaintiff is charged as matter of law with certain fixed and sharply defined duties.

2d.  That if the whole evidence shows plainly that the plaintiff neglected those duties, or omitted to perform them, then, as matter of law, he cannot recover, and no verdict in his favor can stand.

When, as here, all sight of the track and train is cut off till one gets close to the crossing, it is especially the duty of the plaintiff to listen, and listen attentively so that he may discover the train by its noise.  Cut off, like a blind man, from his sense of sight, he must give peculiar heed to bring his sense of hearing into full play.

To do this he must:  1st.  Be a conscious, and not a merely mechanical, listener.  He must have a listening mind as well as ear.

2d.  He must listen at a proper place, sufficiently unobstructed and near the crossing so that he will be sure to hear a train, if it is within limits of possible danger.

3d.  When he has reached such proper place, he must give himself full physical opportunity to hear, by freeing himself from every obstacle within his own control which might prevent or deceive his hearing.  If his hearing is muffled by being inside a

covered butcher's cart, he must get his head outside where he can hear. Lest all other precautions fail, and lest, with all possible care, the train should still start out upon him unexpectedly, if the approach to the crossing is down a sharp grade, making it more difficult to stop suddenly, he should approach at such a slow and cautious speed as will enable him to hear readily, and stop instantly, if a train is suddenly detected.

If the clattering of his butcher's cart with its arched skeleton frame, and its flapping canvass cover, moving down the sharp hill at a trot, which, unchecked, as it was, naturally grew faster as it neared the bottom, and which at the crossing, had become, as the Ward boy describes it "quite fast"—if all this, made his hearing of the train uncertain, or perhaps impossible, then it was his imperative duty to stop his team at suitable distance in order that he might hear.

The plaintiff was 134 feet from the crossing. He had not then got into his cart If we assume that his listening, the mounting of himself and his companion, the turning and starting of his team all occupied a minute, and that the train was moving at the average rate claimed by his own witnesses, twelve miles an hour, in that minute the train would travel over 1000 feet; and if his horse went at six miles an hour, and the train at twelve miles, the train would go 268 feet while he went 134 feet to the crossing so that at the moment of his listening the train must have been about 1300 feet or one-quarter of a mile south of the crossing, and therefore, taking the hypothenuse, more than one-quarter of a mile distant from the listener; and no man can, with decent prudence, trust such an obstructed hearing of a train so remote, when, by a moment's attention at nearer and unobstructed points, he may secure himself against any possible danger.

To sum up this point: That the plaintiff could really listen for the train all the way to the crossing and yet not hear it, is impossible, and on direct examination his counsel does not permit him to claim it.

If, listening, he heard the train, then he was criminally reckless in attempting to cross in front of it.

If, though listening, he neither stopped nor checked his speed

and thus by his own act prevented himself from hearing, this is contributory negligence as matter of law.

If, as is most probable, after listening before he mounted his cart, 134 feet from the crossing, he listened no more but dismissed the train from his thoughts, and with unheeding mind drove upon the crossing, hearing and seeing nothing till he was on the track itself, such unthinkingness and neglect would equally and as matter of law, defeat his action.

But it is the duty of the plaintiff to use his eyes as well as his ears. It is not enough to keep one sense open while he shuts the other. Intervening objects may deaden sound and so deceive the ear. Deep cuts may obscure the approach. The noise of one's own vehicle, if one refuses to still it by stopping, may drown the remote sound. Under some conditions, a single car or locomotive, even a train may steal on the traveler almost noiselessly, but the healthy eye, where a point is reached where it can sweep the track, makes its report to the brain unerringly. A man with good eyes cannot deliberately shut them and trust to his ears alone. If he does, when there is a point whence he might have seen had he looked, and seeing might have escaped, he cannot recover. If there was such a point in this case, from which the plaintiff could see the whole track, and if he knew its existence and that it was near the crossing, though he did not know or remember its precise location, it was his duty as matter of law: 1st. To watch for it. 2d. To look when he got to it, or so seasonably after that if he saw a train, he could stop in time to avert a collision. 3d. To look when he was expecting a train in the direction of the expected and not away from it. 4th. To clear his vision from any obstacle within his own control (as his own wagon cover) which might prevent his seasonable seeing. 5th. To approach the observation point at such a prudent and cautious speed that he could stop in time to avoid danger, if his eyes revealed it.

Upon this point the charge of the presiding judge is clear, emphatic and unmistakable, and the verdict is in plain disregard of the charge. Judge LIBBEY charged:

"Did he listen carefully at the point where he says he listened?

If he did and did not hear, does that satisfy you that it was not a proper point at which he could listen and in compliance with his legal duty? If he could not hear at that point, then, it was his duty to look, and look as soon as he got at a point where he could see. Did he do so? He tells you that he first looked up the track, towards Brunswick and saw nothing, and then turned and looked down and saw the train immediately upon him. And that, he tells you was when he was very near, if not upon, the railroad track, so that his team was struck by the locomotive immediately afterwards, having hardly time to think what to do between the sight of the approaching train rushing upon him and the collision.

Now, the evidence is submitted to you, showing at what point he might have seen the approaching train before he reached the railroad track. Did he look at such point? You must determine whether there is any evidence in the case that satisfies you he did do so. If he did not do so, then, under the rule of law that I have given you, and it is my duty to give you, he is not entitled to recover."

Each of these several duties is charged on the plaintiff, as matter of law, and neglect to perform any one of them, where that would have enabled him to avoid the collision, defeats his recovery as matter of law, and even after verdict. Such neglect is negligence *per se*, and not mere evidence of negligence. Such is the settled law of Maine. *Chase* v. *R. R.*, 78 Maine, 353; *Lesan* v. *R. R.*, 77 Maine, 85; Benner's case, *State* v. *R. R.*, 77 Maine, 538; Pickard's case, *State* v. *R. R.*, 76 Maine, 357. Some of the latest cases in other states which have specifically affirmed this doctrine are: Va., *R. R.* v. *Kellen's Adm'r*, 3 S. E. Rep. 703–7; *R. R.* v. *Hunter*, 33 Ind. 335; *R. R.* v. *Heileman*, 49 Pa. St. 60, quoted and approved by our court in 76 Maine, 366; *R. R.* v. *Snyder*, 24 Ohio St. 670–677; *Artz* v. *R. R.*, 34 Iowa, 153; Same case, 38 Iowa, 293; *Baxter* v. *R. R.*, 41 N. Y. 502; *Gaynon* v. *R. R.*, 100 Mass. 208.

The traveler cannot be excused from his duty by the use of one sense alone. It is his duty both to look and to listen, and, if necessary, to stop in order to do both. Where he cannot or

does not hear, he must look, whenever by looking, he could have seen the train.

Where he cannot or does not see, he must listen and stop, if necessary in order that he may hear. Mich., *Mynning* v. *R. R.*, 31 N. W. Rep. 151; N. Y., *Grippen* v. *R. R.*, 40 N. Y. 34; Iowa, *Mosler* v. *R. R.*, 34 N. W. Rep. 853; Ind., *Cones* v. *R. R.*, 16 N. E. Rep. 638; Miss., *Tucker* v. *Duncan*, 9 Fed. Rep. 867-72; Beach. Contrib. Neg. 863; N. Y., *Salter* v. *R. R.*, 75 N. Y. 273; Oregon, *Durbin* v. *Ry. Nav. Co.*, 17 Pac. Rep. 7, 8 and cases cited; Ill., *R. R.* v. *Gratzner*, 46 Ill. 74, 85; N. J., *Merkle* v. *R. R.*, 9 Atl. Rep. 680. All the Maine cases before cited speak to the same point. *C. & N. W. R. R.* v. *Gertsen*, 15 Brad. (Ill.), 614. The following late cases are specially close to the case at bar in their facts, and in all of them the court held as matter of law that the plaintiff could not recover. Iowa, *Slater* v. *R. R.*, 32 N. W. Rep. 264; Va., *R. R.* v. *Kellam's Adm'r.*, 3 S. E. Rep. 703; Ind., *Cones* v. *R. R.*, 16 N. E. Rep. 638; Mich., *Freeman* v. *R. R.*, 41 N. W. Rep. 875; *R. R.* v. *Elliott*, 28 Ohio St. 340; *R. R.* v. *Rathger*, 32 Ohio St. 66; *R. R.* v. *Beale*, 73 Pa. St. 504; *Wilds* v. *R. R.*, 29 N. Y. 315; Mich., *Kwiotowski* v. *R. R.*, 38 N. W. Rep. 463.

*W. Gilbert, W. E. Hogan*, with him, argued orally for plaintiff.

HASKELL, J. Defendants' railroad crosses Pearl street, in Bath, at the foot of a sharp pitch in that street, at the top of which, and 134 feet distant from the railroad, stands the shop of Mr. Ward.

The plaintiff's own account of the circumstances attending his injury is, in substance, that, for several months before the accident, he had been in the employ of Ward, driving a "meat team," and was familiar with the street, the railroad crossing, and the running of the railroad trains; that, on the morning of the accident, knowing that the morning train from Bath had not passed, he listened for it, did not hear it, mounted a meat wagon covered with canvass, sat at the front, inside the covering, and started for the crossing at a trot; that, as he approached the crossing, he leaned forward and looked up the track from Bath, then down

the track towards Bath, and saw the train close upon him; that when he looked towards Bath, his horse's fore feet were between the rails; that he heard the train strike, felt a jar and became unconscious.

The plaintiff listened before he started for the crossing. That was an act of care. He had a right to rely upon the train's approach at a rate of speed not exceeding that allowed by law, six miles an hour; and, if the train had been coming within that rate of speed, observing the usual signals, he may well have presumed, from not hearing it, that it was so far distant as to give him ample time to cross the track in safety; so, he appears guilty of no act of carelessness until he reached a point in the street where an approaching train might be seen, if looked for.

The evidence shows that at 25 or 30 feet distant from the crossing, the approaching train from Bath might have been seen by the plaintiff several hundred feet distant from the crossing. The plaintiff did not look in that direction until his horse's fore feet were between the rails. Was the neglect on his part to look in that direction a want of ordinary care and prudence? Is a traveler justified in driving upon a railroad crossing, in the absence of safety signals giving him the right to cross, without looking for an approaching train?          \

It has been many times decided in this state, that the traveler, before crossing a railroad, must both look and listen. That is the settled law of this state. *Chase* v. *Maine Central Railroad Company*, and cases cited, 78 Maine, 346.

If the crossing at which the plaintiff was injured is so constructed that an approaching train can not be seen until a traveler comes very near to the railroad track, common prudence requires him to approach at such speed that when an approaching train may be seen, he may be able to stop, and allow such train to pass.

Had the plaintiff properly slackened his pace and seasonably looked for the approaching train that injured him, he might have let it pass in safety. This he did not do; and his own negligence contributed to his injury. It is no excuse for him that the train was running at an unlawful rate of speed. Negligence of both

parties may have contributed to the disaster; but the common law, in such case, gives neither damages for his injury arising from joint fault.

The question at issue is ordinarily for a jury to decide ; but, when the facts are simple and plain, and not in dispute, and clearly show contributory negligence by a plaintiff, it becomes the duty of the court to so declare, and withhold relief. In this case, the plaintiff's own statement of his conduct shows that he has no legal right to recover damages for his injury, and the verdict must be set aside.

*Motion sustained. New trial granted.*

PETERS, C. J., WALTON, DANFORTH, VIRGIN and LIBBEY, JJ., concurred.