WILLIAM McCANNA *vs.* NEW ENGLAND RAILROAD COMPANY.

PROVIDENCE—MARCH 29, 1898.

PRESENT: Matteson, C. J., Tillinghast and Rogers, JJ.

Plaintiff was injured and his horse killed on a grade crossing of the defendant's railroad. He was familiar with the crossing, and had an unobstructed view of the railroad for some distance before reaching it, excepting a bank that obstructed his view when very near to it; he did not stop his horse, but listened; his carriage made some noise, and he did not hear the whistle until so near that his horse became unmanageable and plunged forward striking one of the cars, although he gathered up the slackened reins and tried to stop him :—

*Held*, that plaintiff was guilty of negligence and had no claim against the defendant.

The duty to look and listen before crossing a railroad track at grade requires the traveler to select a position from which an observation can be made.

But if looking or listening should be rendered unavailing and useless, then the law would excuse the traveler therefrom, as it never requires the performance of a futile act.

TRESPASS ON THE CASE for negligence. Heard on defendant's petition for a new trial.

TILLINGHAST, J. This is an action of trespass on the case for negligence. It was tried in the Common Pleas Division and resulted in a verdict for the plaintiff for $500, and the defendant now petitions for a new trial on the grounds (1) that the verdict was against the evidence and the weight thereof, and (2) that the verdict was against the law.

The injuries complained of were received by the plaintiff on

the 9th of October, 1895, at about four o'clock in the afternoon, at a railroad crossing on the main road between East Blackstone, Mass., and Woonsocket, R. I., in the following manner : The plaintiff, who is an undertaker, had been to a burying-ground with a funeral and was returning along said road to Woonsocket, driving a one-horse hearse, and when he reached the point where the road crosses the railroad at grade, his horse, which was a spirited one, became unmanageable by reason of the approaching train and, despite the efforts of the plaintiff to control him, plunged forward and ran into the rear part of the third car of the limited express train running from Boston to Willimantic. The train was a regular one and was on time when the accident occurred. The hearse was overturned, and the plaintiff was thrown to the ground and injured by the collision, and the horse was so badly injured that he afterwards died in consequence thereof.

The evidence shows that a person approaching said crossing from the direction in which the plaintiff was approaching it would have an unobstructed view of the railroad for a considerable distance, until he gets near to the crossing, when a hill or bank, covered with trees and shrubbery, would shut off his view until he comes near to said crossing.

The plaintiff's declaration alleges negligence on the part of the defendant (a) in its failure to blow the whistle ; (b) in its failure to ring the bell; (c) in its failure to maintain any gate or flag-man at said crossing ; and (d) in its failure to give any warning or signal whatever that its locomotive and train were approaching said crossing.

The plaintiff was perfectly familiar with the crossing and had been over it five times before the same day. He testified that he was looking out for any train that might come along ; that he was listening, with his head inclined to the left, and that the first he knew of the approach of the train was when he heard the whistle blow, he then being about seventy feet from the track ; that he then gathered up the slack reins and tried to stop his horse but could not, as it threw up its head and made a plunge forward, striking the third car as afore-

said.  In cross-examination plaintiff testified that he was trotting his horse right along until he got within sixty feet or so of the crossing, trying to listen at the same time "*with one ear,*" and that as he could not hear anything there was no occasion for him to stop; that the first he knew he heard the whistle, and then it was too late to pull up; that if he had heard the train coming he would have stopped, but not hearing it he did not stop.   He further testified that his carriage rattled along, making some noise while he was trying to listen as aforesaid, and that a hack was being driven just behind him.   The plaintiff offered no testimony except his own in support of his case.

It is very clear that upon such testimony as this the plaintiff has no legal claim against the defendant.   In attempting to cross the railroad in the manner above stated he was guilty of gross negligence.   He was evidently driving with a slack rein; he did not stop, or even slacken the speed of his horse; and, according to his own testimony, the only listening which he did, if indeed it can be said that he listened at all within the fair and practical meaning of the term, was of such a perfunctory sort as to be of no avail.   The fact that his view of the track was obstructed was not only no excuse for his attempting to cross the same without observing the customary rule, but rendered its observance, in so far at least as stopping and listening were concerned, all the more necessary and imperative.   The further fact that he was driving a spirited horse also called for the exercise of a higher degree of care than would otherwise have been required, the well-understood rule everywhere being that the degree of care to be exercised in a given case must be commensurate with the degree of danger.   Moreover, the duty to look and listen before crossing a railroad track at grade requires the traveler to select a position, if practicable, from which an observation can be made.   That is to say, " he must exercise care to make the act of looking and listening reasonably effective."   3 Elliot on Railroads, § 1166 ; Patterson on Railway Accident Law, 171, and cases cited.   Had the plaintiff stopped and listened at a reasonable distance from said crossing in the circum-

stances of the case, as it was clearly his duty to have done, and as even a *modicum* of common sense and common prudence would seem to have dictated, no harm could have befallen him. Having failed to observe such a simple and reasonable precaution, the law can afford him no redress.

In the case of *Papper* v. *So. Pacific Railway Co.*, 105 Cal. 389, cited by defendant, the court say : "If he could not see an approaching train because his vision was obstructed, ordinary care for his own safety required him to stop in order that his hearing should not also be obstructed, and in any event to make his approach so slowly as to give him complete control of his team, and enable him to stop instantly if occasion required."

In *Chase* v. *Maine Central Railroad Co.*, 167 Mass. 383, the court state the rule as follows : "The general rule in this Commonwealth undoubtedly is that, as a railroad crossing is a dangerous place, a traveler on the highway is bound to make a reasonable use of his sense of sight as well as of hearing, in order to ascertain whether he will expose himself to danger ; that if he fails so to use his senses, without reasonable excuse, he fails to use reasonable care, and that the burden is on the plaintiff to show such care, even though the defendant is in fault. So, too, it may be said to be a general, although not a universal, rule that if there is anything to obstruct the view of a traveler on the highway at a crossing at grade, it is his duty to stop until he can ascertain whether he can cross with safety."

To the same general effect are *Littaur* v. *Narragansett Pier R. R. Co.*, 61 Fed. Rep. 591 ; *Rhoades* v. *Chicago, &c. R. R. Co.*, 21 Am. & Engl. R. C. 659 ; and *Chase* v. *Maine Central R. R. Co.*, 78 Me. 353, cited by defendant. It is true, as suggested by plaintiff's counsel, that in *Ormsbee* v. *Boston & Prov. R. R. Co.*, 14 R. I. 102, this court held, in substance, that the rule requiring a traveler to stop and look and listen before attempting to cross a railroad was subject to certain exceptions, one of which is that where the view of the track is so obstructed that the traveler is unable to see up and down the same as he approaches it, he is obliged to act

upon his judgment at the time as to what precaution he shall take. That is, that where compliance with the rule is impracticable or unavailing, he is excused from observing it. We approve of the doctrine thus enunciated. Of course the rule is and must necessarily be subject to exceptions, as indeed what rule of law or of human conduct is not? If looking or listening, or both, should for some reason be rendered unavailing and useless, then the law would excuse the traveler therefrom, as it never requires the performance of a useless or futile act. So again, as said in the Ormsbee case, "where the direct act of some agent of the company had put the person off his guard and induced him to cross the track without precaution," this would excuse the traveler from observing said rule. These exceptions, however, furnish no support to the plaintiff's case. For, while his view was obstructed in manner aforesaid, yet there was evidently nothing which interfered with his hearing the approaching train except the noise made by his own carriage, and perhaps that of the hack in his rear; and there can be no doubt whatsoever that if he had stopped and listened he would have heard the approaching train. As it is clear, therefore, that the plaintiff's own negligence was the proximate cause of the injury, there is no occasion for us to consider the alleged negligence on the part of the defendant or to consider the evidence offered by it in the case.

Petition for new trial denied.

*Charles H. Page and Charles H. Page, Jr.*, for plaintiff.
*James M. Ripley and John Henshaw*, for defendant.