W. H. CARTER *v.* CENTRAL VERMONT RAILROAD COMPANY.

May Term, 1899.

Present :  TAFT, C. J., TYLER, MUNSON, START, THOMPSON and WATSON, JJ.

Opinion filed April 13, 1900.

*Contributory negligence—Plaintiff's negligence disclosed by his own case*—If, in an action based on the alleged negligence of the defendant, the case made by the plaintiff discloses the fact that his own negligence caused or con-

tributed to the injury, he is not entitled to recover. The defendant's
negligence must have been the sole cause of the injury.

*Negligence of traveler at railroad crossing*—If a traveler in approaching a rail-
road crossing might, by the use of the vigilance which the law requires,
discover and avoid danger from an approaching train, and omits to
exercise such vigilance, he is guilty of negligence.

*Traveler's duty at railroad crossing in respect to vigilance*—It is the duty of a
traveler in approaching a railroad crossing to look and listen for an
approaching train. When either his sight or his hearing cannot be
effectively used, he must be more alert in the use of the other, and an
obstruction of both or either may make it his duty to stop, as well as
to look and listen.

*Prudence must attend vigilance*—If a traveler at a railroad crossing sees or
hears an approaching train and is then injured in consequence of an
imprudent or daring attempt to cross the track in advance of it, he
cannot recover for the injuries so received.

*Traveler and railroad company—Reciprocal duties—Traveler may not neglect
duty in reliance upon company's performance of duty*—It being the legal
duty of a traveler upon approaching a railroad crossing to look and
listen for an approaching train, he cannot without fault omit
such precaution in reliance upon the performance by the railroad
company of its duty to give notice of the approach of a train by signals.

*Plaintiff's testimony viewed as a whole in determining its tendency*—It avails
nothing for a plaintiff to testify to the effect that he both looked and
listened in approaching a railroad crossing at which he was injured,
when his account of the occurrence of the injury shows conclusively
that he was wanting either in vigilance or in prudence.

*When the question of negligence is for the court*—The question of contributory
negligence becomes one of law for the court, when from the undisputed
facts reasonable minds can draw but one conclusion.

*The case—Verdict properly directed for defendant*—In this case the uncontra-
dicted testimony of the plaintiff disclosed the fact that in driving upon
the defendant's track he was guilty of negligence which contributed to
the injury for which he sued, and a verdict for the defendant was
properly directed.

CASE for personal injuries received by the plaintiff from
a moving train while he was crossing the defendant's railroad
track at grade at a highway crossing in Bethel. Plea, the general
issue. Trial by jury, Caledonia County, June Term, 1897

*Rowell*, J., presiding. Verdict for the defendant directed on motion. Judgment on verdict. The plaintiff excepted.

There was no evidence tending to show that the defendant did not do what it could to avoid disaster after it discovered the plaintiff in a position of peril.

The case was twice argued before the Supreme Court.

*Wendell P. Stafford* for the plaintiff.

*Dunnett & Slack* and *Hunton & Stickney* for the defendant.

TYLER, J. At the close of the plaintiff's testimony, the defendant moved the court to direct a verdict for the defendant for that it appeared that the plaintiff was guilty of contributory negligence in approaching and driving upon the railroad track with too great speed, and in not using his eyes and ears with vigilance to discover and avoid the approaching train. The court granted the motion and directed a verdict and judgment for the defendant, which direction the plaintiff claims was error.

There being no conflict in the testimony in respect to the facts and circumstances attending the occurrence of the accident, the only question was whether those facts and circumstances were so decisive of the plaintiff's contributory negligence that there was no room for rational doubt upon the subject.

The rule has been stated in many different forms, but it is this in substance : when it appears from undisputed facts, from the plaintiff's own evidence, that he was not in the exercise of that degree of care which careful and prudent men would exercise in circumstances of like exposure and danger, the question of the plaintiff's right to recover is one of law for the court.

If the circumstances are such that reasonable minds might draw different conclusions respecting the plaintiff's fault, he is entitled to go to the jury upon the facts. The judge takes the case from the jury only when it is susceptible of but one just opinion. *Ill. Cen. R. R. Co.* v. *Nowicki*, 148 Ill. 29, 60 Am. and Eng. R. R. Cas. 690. In *Schriber* v. *R. R. Co.*, (Minn.) 2 Am. and Eng. R. R. Cas. N. S. 289, after remarking that the

decisive test is whether or not fair-minded men could honestly differ as to the inferences to be drawn from admitted facts, Start, C. J. said : " This rule must be applied in practice with caution, lest the courts usurp the functions of the jury, and unwittingly deprive a party of his constitutional right to a trial by jury; and, if there is a fair doubt as to the inferences to be drawn from an admitted state of facts, the question must be submitted to the jury ; but, in the absence of such fair doubt, it is equally the duty of the court to decide the question as one of law and instruct the jury accordingly."

S. & R. on Neg. sec. 56, state the rule thus: "When the facts are clearly settled, and the course which common prudence dictated can be so clearly discerned that only one inference can be drawn     *     *     *     it is the duty of the court to take the case away from the jury.     *     *     *     The question is then one of law for the court to decide."     *Worthington* v. *R. R. Co.*, 64 Vt. 107.

The duty of a traveler on arriving at a railroad crossing to look and listen for an approaching train seems too obvious to require judicial declaration, yet it has been stated in numerous cases.   Some courts go further and make it the traveler's duty to *stop* and look and listen; but the rule requiring the traveler to stop, though a wholesome rule, cannot well be adopted as one of general application, for in some localities the traveler can see the track so great a distance that he can determine by the sense of sight whether or not he can safely cross, as in *Manley* v. *D. & H. Canal Co.*, 69 Vt. 101.   But when the view is obstructed it may be his duty to stop in order to listen effectually, and especially is this the case when his hearing is obstructed by the noise of his own carriage or by objects situated between him and the track.   It has so often been stated that the traveler must approach a railroad crossing with his senses of sight and hearing alert for danger that it may be said to have become a maxim. When the situation is such that one of these senses cannot be

fully used he must be more alert in the use of the other. By the impairment of these senses or either of them, or by the intervention of objects to obstruct his sight or hearing, ordinary care may require him to stop in order to ascertain with reasonable certainty, before driving upon the track, that a train is not approaching. *Manley* v. *D. & H. Canal Co.*

In *Fletcher* v. *Fitchburg R. R. Co.*, 149 Mass. 127, it is stated: " As a general rule a person is not in the exercise of due care, who attempts to cross a railroad track without taking reasonable precaution to assure himself by actual observance that there is no danger from approaching trains."

Let us apply these rules, which are as well settled as any rules of law, to the facts in this case.

The plaintiff was driving a pair of heavy, slow horses, attached to a wagon and load of about a ton's weight; he was a stranger in the locality but was apprised of the crossing by a sign which was visible for a distance of forty-seven rods before he reached it, and which he testified he saw; he had also seen a train going south a short time before; he also testified that he was watching for a train as he drove along, and that no signals were given.

The crossing was dangerous; an approaching train was hidden from the traveler's view until he was near the crossing, and the sound of it was obstructed by an intervening embankment; the crossing itself was on a curve in the track. The plaintiff, who, as the exceptions state, had good sight and hearing and was ready to act in an emergency, trotted his horses along at the rate of four or five miles an hour, his heavy team making some noise on the frozen ground, and, without stopping or slackening his speed, he drove upon the crossing. When his horses' forward feet were between the rails his near horse threw up its head and looked over the other one's neck, which attracted the plaintiff's attention, and he then looked around and saw the engine just appearing in sight in the cut at the angle or curve in the highway, and at a distance of from eight to twelve rods from

him.    Whatever the exact distance was, the plaintiff was not able to urge his horses across the track in time to prevent a collision and injury.

The plaintiff testified that when he noticed this action of his horse he spoke to it and said, " what is the matter," * * and looked around to see—and right—about this angle here—the engine just appeared in sight in the cut." In another connection he said that when he noticed the action of his horse he looked up.   Witnesses called by the plaintiff testified that when his horses' forward feet were between the rails the plaintiff could have seen up the track two hundred feet ; others said that when near the track he could have seen seven or eight rods.

If the case made by the plaintiff discloses the fact that the accident happened as a result of his negligence, or that his negligence contributed to it, he is not entitled to recover.   The defendant's negligence must have been the sole cause of the accident.   Ordinary care, on the plaintiff's part, in the circumstances, required him to approach the crossing with his senses alert for danger.   The plaintiff's counsel would hardly contend that, if the plaintiff had seen the train before he reached the crossing, he would have been in the exercise of ordinary care in attempting to cross.   The train was too near and running too fast for such an undertaking.   It was said by the court in *Blake's Exr's.* v. *R. R. Co.*, 30 N. J. Eq. 240 : " A person intending to cross a railroad track is bound to look and listen for an approaching train ; and if he sees or hears a train approaching, and then daringly assumes the hazard of attempting to cross in advance of it, and fails, he must bear the consequence of his folly." Similar language was used by Mr. Justice Field, in *R. R. Co.* v. *Houston*, 95 U. S. 702.   The same was held in *Burnett* v. *R. R. Co.*, (N. J. L.) 38 Atl. 663, and in *State* v. *R. R. Co.*, (Md.) 39 Atl. 610.

If, by the vigilant use of his eyes and ears—which in the circumstances is only ordinary care—the plaintiff might have discovered and avoided the danger, and omitted such vigilance,

he was guilty of contributory negligence; and he is chargeable with such knowledge of the approach of the train as he might have obtained by the exercise of that degree of care, which in the circumstances of danger, he was bound to use.

The decisions have been somewhat diverse upon the subject of directing verdicts in cases similar in their facts to the present one.

In *Chase* v. *R. R. Co.*, 78 Maine 346, the plaintiff's intestate approached the crossing, trotting his horse and without slackening his speed, and just as his horse's head reached the crossing, a train of cars that had been concealed from his view, shot out of a cut and upon the crossing, so that his sleigh was upset and himself fatally injured. The court said there could be no doubt that if the intestate had stopped so he could have listened attentively, he would have heard the train, and that he could not listen carefully and effectually when driving a team with sleigh-bells attached without stopping to still the noise of his team; and it was held to be negligence *per se* for a person to cross a railroad track without first looking and listening for a coming train; that if his view is unobstructed he may have no occasion to listen; but if his view is obstructed, then it is his duty to listen, and to listen carefully; and if one is injured at a railroad crossing by a passing train or locomotive, which might have been seen if he had looked, or heard if he had listened, presumptively he is guilty of contributory negligence; and if this presumption is not repelled, a recovery for the injury cannot be had. *Allen* v. *R. R. Co.*, 82 Me. 111; *Smith* v. *R. R. Co.*, 87 Me. 339; *Giberson* v. *R. R. Co.*, (Me.) 36 Atl. 400.

*Fleming* v. *R. R. Co.*, 49 Cal. 253, was where a traveler was driving a four-horse team along a road running parallel with, and near a railroad, and as he approached the crossing the air was so filled with dust that he could not see the railroad; *held*, that as his wagon made some noise, ordinary prudence required him to stop his team so that he might listen under the most favorable circumstances to ascertain whether a train was approaching; that

as he could not use his eyes with effect, it was incumbent upon him to make the best possible use of his ears, which he could not do while his team was in motion. In that case the court said : "* * * But the plaintiff testified that his wagon ' made some noise,' and every one knows that a four-horse team attached to a road wagon travelling on a trot on an ordinary road will produce sufficient noise to seriously obstruct the hearing of the driver ; and when going in a walk, though the noise may be less, it will necessarily be sufficient to impede the hearing to a considerable extent. As the plaintiff could not use his eyes with effect, it was incumbent on him, as a person of ordinary prudence, to make the best use of his ears, which he could not do while his team was in motion."

A different doctrine was held in *R. R. Co.* v. *Lane*, 130 Ill. 116, where the court said : " The duty of a person approaching a railroad crossing with a wagon and team, even when such wagon is old and makes considerable noise, and when he knows there are obstructions which to some extent interfere with the view of an approaching train, and also knows a train is due about that time, to bring his team to a full stop before driving upon the railroad track, is not so absolute and unqualified as that a court can say, as matter of law, and regardless of all other attendant circumstances, that such person is guilty of a want of ordinary care. It is for the jury to determine from all the facts and circumstances in proof, whether or not there was negligence, and it is not for the court to tell them that certain facts constitute such negligence as precludes a recovery." (The doctrine of comparative negligence seems to be held in Illinois.)

It was held in *Stackus* v. *R. R. Co.*, 79 N. Y. 464, that the traveler need not, as matter of law, stop his team, or rise up in his wagon, or get out ; that he must look both ways and listen for the approach of the train ; that whether he ought to do either, or all of these things, in order to relieve himself from the charge of negligence, is for the jury to decide. The cases, *Galveston, etc. R. R. Co.* v. *Porfert*, (Texas) 37 Am. & Eng. R. R.

Cas. 540, and *Petty* v. *Hannibal, etc. R. R. Co.*, (Mo.) 28 Am.
& Eng. R. R. Cas. 618, cited on the plaintiff's brief, are to the
same effect. In the latter case the court held, that whether a
person could have heard the train by stopping and listening was
a question of fact for the jury. And see *R. R. Co.* v. *Griffith*,
159 U. S. 603 and *R. R. Co.* v. *Cody*, 166 U. S. 606, which
cases, however, recognize the rule that the question of negli-
gence becomes one of law when, from the facts, reasonable men
can draw but one conclusion.

The plaintiff's counsel contends in this case that from the
defendant's omission to give the statutory signals the plaintiff
had a right to assume that the engine was not within eighty rods
of the crossing, and that acting upon that assumption, whether
he might, in the exercise of reasonable care, attempt to cross,
was a question upon which men might reasonably differ. It
may be noted that there is no testimony tending to show that the
plaintiff drove upon the crossing relying upon the fact that the
signals were not given; but we will assume that he did so rely.
Thomas on Negligence, 424, lays down this rule and cites sev-
eral New York cases in its support: " The fact that a traveler was
not aware of the vicinity of an approaching train, that no signal
was given, does not assure a safe crossing nor excuse him from
using the care and vigilance otherwise required from him."
Pierce on Railroads, 342, states the law as follows : " A traveler
upon a highway, when approaching a railroad crossing, ought to
make a vigilant use of his senses of sight and hearing, in order
to avoid a collision. This precaution is dictated by common
prudence. He should listen for signals, and look in the different
directions from which a train may come. If by neglect of this
duty he suffers injury from a passing train, he cannot recover of
the company, although it may itself be chargeable with negli-
gence, or have failed to give the signals required by statute, or
be running at the time at a speed exceeding the legal rate." See
Beach on Contrib. Neg. secs. 13, 63. In the former section the
author says : " The requirements of the law, moreover, proceed

beyond the featureless generality that one must do his duty in this respect, or must exercise ordinary care under the circumstances. The law defines precisely what the term 'ordinary care under the circumstances' shall mean in these cases. In the progress of the law in this behalf, the question of care at railway crossings, as affecting the traveler, is no longer a question for the jury. The *quantum* of care is exactly prescribed as matter of law. In attempting to cross, the traveler must listen for signals, notice signs put up as warnings, and look attentively up and down the track. A multitude of decisions of all courts enforce this reasonable rule."

It is a legal duty imposed upon the traveler to look and listen for an approaching train, for this is what a prudent man would do ; therefore, as was said in *Rodrian* v. *R. R. Co.*, 125 N. Y. at page 528, he cannot omit such a reasonable precaution in reliance upon the performance by the railroad company of its duty to give reasonable notice of the approach of the train. The same is held in *Gorton* v. *R. R. Co.*, 45 N. Y. 660, in *Baxter* v. *R. R. Co.*, 41 N. Y. 502 and in *Salter* v. *R. R. Co.*, 75 N. Y. 273.

In *Fletcher* v. *R. R. Co.*, the court quotes with approval an expression in the opinion in *McCrory* v. *R. R. Co.*, 31 Fed. Rep. 531: "He (the traveler) cannot say, 'There is something temporarily obstructing my vision, but I will take it for granted that there is no danger, and undertake to cross the track. * * *' The law lays it down clearly that a man must look and listen ; and if, by looking and listening, he could ascertain the approach of a train, and fails to do so, he is guilty of contributory negligence, and cannot recover."

It was said in *Butterfield* v. *R. R. Co.*, 10 Allen 532 : "We must assume it to be true that neither the bell nor whistle was sounded, and that the defendants violated their duty in this respect. A traveler has a right to expect that they will perform this duty ; and has some right to expect that he will hear the noise. But this expectation does not excuse him from exercising

reasonable care to ascertain by sight as well as hearing whether there is a train coming immediately upon him as he attempts to cross the track. The negligence of the company does not authorize him to maintain an action, if he also is negligent."

It was held in *Grostick* v. *R. R. Co.*, 90 Mich. 594, " That a person about to cross a railroad track is bound to recognize the danger, and to make use of the senses of hearing and sight, and to ascertain, before attempting to cross, whether a train is in dangerous proximity. If he neglects to do this, and ventures blindly upon the track, it must be at his own risk; and such conduct should be pronounced negligence by the court, as matter of law." In that case the declaration alleged and the plaintiff's evidence tended to show that the defendant was guilty of negligence in not continuously giving signals for forty rods before reaching the crossing, as the statute required.

In *R. R. Co.* v. *Howard*, 124 Ind. 280, an instruction that if the whistle was not sounded nor the bell rung, this was a circumstance tending to show want of contributory negligence, was held erroneous.

The New Jersey court held that the failure of the defendant to give signals will not relieve the traveler from his duty. *R. R. Co.* v. *Righter*, 42 N. J. L. 180. See, also, *Durbin* v. *R. R. Co.*, 17 Or. 5.

It was said in *Continental Improvement Co.* v. *Stead*, 95 U. S. 161, that travelers upon a common highway which crosses a railroad upon the same level, and the railroad company running a train, have mutual and reciprocal duties and obligations, and that although the train has the right of way, the same degree of care and diligence in avoiding a collision is required from each of them; that this right does not impose upon the traveler the whole duty of avoiding a collision, but is accompanied with and conditioned upon the duty of the train to give due and timely warning of its approach, and that the degree of diligence to be used on either side is such as a prudent man would exercise under the

circumstances of the case in endeavoring fairly to perform his duty.

This language is often quoted as an accurate and concise statement of the law respecting the correlative rights and duties of travelers and railroad companies. But the court evidently did not intend to excuse the traveler for his neglect of duty on account of the defendant's neglect, for it expressly held in *Railroad Co.* v. *Houston,* reported in the same volume at page 667, that the neglect of the engineer to sound the whistle or ring the bell on nearing a street-crossing does not relieve a traveler on the street from the necessity of taking ordinary precautions for his safety; that before attempting to cross the railroad track, he is bound to use his senses,—to listen and look,—in order to avoid any possible accident from an approaching train. If he omits to use them and walks thoughtlessly upon the track, or if using them, he sees the train coming, and, instead of waiting for it to pass, undertakes to cross the track, and in either case receives any injury, he so far contributes to it as to deprive him of any right to complain. In the latter case the court did not hesitate to say from the record, that, had the plaintiff used her senses, she could not have failed both to hear and to see the train.

Some cases have come to our notice since the reargument of this case which are much in point. In *Chase* v. *R. R. Co.,* 167 Mass. 383, the court, after stating the duty of the traveler to use his senses of sight and hearing at a railroad crossing, said : " So, too, it may be said to be a general, though not a universal rule that, if there is anything to obstruct the view of the traveler on a highway at a crossing at grade, it is his duty to stop until he can ascertain whether he can cross with safety." This rule is cited with approval in the recent case of *McCanna* v.*R.R.,* (R. I.) 39 Atl. 891. The syllabus to *R. R. Co.* v. *Smalley,* (N. J.) 39 Atl. 695, concisely states the opinion as follows :

" The duty to look and listen before crossing a railroad includes the duty to do that which will make looking and listening reasonably effective. If there is a permanent obstruction to

sight that would make danger invisible, and a transient noise that would make it inaudible, it is negligence to go forward at once from a place of safety to a place of possible danger. Prudence requires delay until the transient noise has abated, and hearing again becomes efficient for protection." The court further said, "the plaintiff went forward into a danger which permanent obstructions made it impossible to see, and which a passing noise made it difficult to hear. The permanence of the obstructions to sight made hearing his best reliance. A few moments' delay would have given him the full benefit of it. In advancing at once while circumstances interfered with its efficient exercise, he acted with less prudence than the law exacts."

It was held in *Blackburn* v. *Southern Pac. Co.*, vol. 12, part 3, Am. & Eng. R. R. Cas. 461, that when the deceased, without stopping his vehicle for the purpose of listening for approaching trains, attempted to drive across a railroad track in a city street, at a crossing with which he was familiar, and from which the view of the approaching train was obstructed, and was killed by a train while making such an attempt, a verdict should be directed for the railroad company, although the traveler was approaching the crossing at a slow walk, and the train was running at an unlawful rate of speed ; that a failure to stop and listen before attempting to cross, under such circumstances, was negligence *per se.* The opinion reviews the leading cases upon this subject and contains a clear statement of the law.

In the recent case of *Hearn* v. *R. R. Co.*, Atl. Rep. 59, the Maryland court held that a traveler in a closed vehicle, who attempted to cross a railroad, without stopping, looking, and listening for an approaching train, was negligent, and that the failure of the trainmen to give the required signals did not excuse his failure to exercise such precautions.

Numerous cases are cited upon the defendant's brief in which courts in various parts of the country have in like manner declared the law. They go upon the ground that there is a clearly defined duty imposed upon the traveler, and that unless the

facts in a given case show that he has performed that duty he is precluded from a recovery although the defendant was in fault, —in other words, that his omission of a legal duty is contributory negligence.

In *Magoon* v. *R. R Co.*, 67 Vt. 17, the vital facts were that when the plaintiff reached the crossing he found cars upon it waiting to be moved, and attempted to pass between two of them, when by the exercise of ordinary care he might have discovered that an engine was in a position where it could and did run down the track, attach itself to and move the cars before he could swing himself upon the platform. In the present case when the plaintiff reached the crossing, a train was so near, though out of sight, that, as he demonstrated, he could not force his team across after it came within his sight. In other phrase, when he reached the crossing a train was about to pass over it and in the exercise of ordinary care he might have known it.

The plaintiff testified that he was "watching" for a train as he drove along. Assuming that the term implies that he was both looking and listening and that he continued to look and listen until he drove upon the track, his subsequently detailed account of the occurrence shows that he was not watching vigilantly for a train before the action of his horse attracted his attention to it. He could not have watched effectually with his sense of hearing without stilling the noise of his team. Besides, as the track northward could be seen for so short a distance, common prudence required him to make diligent use of his senses to ascertain whether a train was about to pass. *Allen* v. *R. R. Co.*, *supra*, and cases cited.

An expression of the court in *Carson* v. *R. R. Co.*, 147 Pa. 219, 30 Am. St. Rep. 727, is fairly applicable here: "It is in vain for a man to say that he looked and listened who walks in front of a moving locomotive." The ruling of the court was correct that the plaintiff's testimony showed that he did not use his eyes and ears vigilantly when he reached the crossing.

*Judgment affirmed.*

*Start* and *Thompson*, JJ., dissent.