ISRAEL GUILMONT'S ADMINISTRATOR *v.* CENTRAL VERMONT
RAILWAY CO.

May Term, 1905.

Present: ROWELL, C. J., TYLER, MUNSON, START, WATSON, HASELTON, and
POWERS, JJ.

Opinion filed November 9, 1905.

*Negligence—Railroads—Crossings—Duty of Engineer—
Contributory Negligence.*

A locomotive engineer has the right to assume that a person, whom
he sees approaching the track, will not drive upon it in front of
the train; and he owes such person no duty till he sees, or ought
to see, that he is about to drive upon the track.

A railroad company is not responsible for the death of a person who
is killed by negligently driving in front of a moving train, when
it appears that those in charge of the train were in their proper
places, that the engineer, as soon as he saw deceased approaching
the track, instantly shut off steam, applied the emergency brake,
sounded the whistle, and did all he could to stop the train.

CASE for negligence. Plea, the general issue. Trial by
jury at the March Term, 1904, Washington County, *Stafford,*
J., presiding. Verdict and judgment for the plaintiff. The
defendant excepted. No exception was taken to the charge.
The opinion states the case.

*Hunton & Stickney* for the defendant.

*F. L. Laird, M. M. Gordon,* and *R. A. Hoar* for the
plaintiff.

TYLER, J. This action is brought by the plaintiff, as
administrator of the estate of Israel Guilmont, deceased, under
the statute, to recover damages to the wife and next of kin,

on account of the death of the intestate, alleged to have been caused by the wrongful act of the defendant.

The defendant's train men were running a regular freight train of eleven cars, on its usual time, between Montpelier and Barre, at about thirty miles an hour.   As the train approached a certain bridge the fireman put in a shovel full of coarse coal, the effect of which was to surround the engine with smoke. The distance from this bridge to a highway crossing, which the train was approaching, was about eight hundred feet. After the smoke cleared away so that the engineer could see ahead as far as the crossing, the distance to it was one hundred and fifty to two hundred feet.   When the crossing came into view the engineer saw the intestate with a horse and sled ten to fifteen feet from the crossing, and then it was not apparent that he was about to cross.   As soon as he was seen to approach the track the engineer put on the emergency brake and sounded the danger whistle, but it was too late to stop the train and avoid striking the intestate.   He was struck and received injuries of which he soon died.   It appeared that he had stopped a few minutes at the "Tabor House," which was opposite the crossing and about one hundred feet from it, and then, without taking reasonable precautions, drove to the railroad track and upon the crossing in front of the train.

The court held and instructed the jury, without exception by the plaintiff, that the intestate was guilty of contributory negligence; but the court further said to the jury, in substance, that the only question for their determination was, whether, after the defendant's servants saw or ought to have seen the intestate about to cross and in a position of peril, they neglected the reasonable means at their command which might have saved him from accident.

The exceptions leave no open question in respect to negligence by the defendant prior to the engineer's discovering

the intestate near the crossing. The only question submitted to the jury was in relation to what occurred after the train men saw or ought to have seen him about to cross, and whether they used all reasonable means to save him.

The case made by the plaintiff shows that as Guilmont approached the railroad track and when within twenty-five feet of it he looked up and down the track and then up the track a second time; that the track was plainly in sight and that he was acquainted with the locality; that the horse moved slowly but steadily forward (though to some witnesses he seemed to stop or hesitate for an instant before stepping upon the track), and passed over it unharmed. It also appeared that Guilmont and his sleigh had nearly cleared the track when they were struck by the engine. Guilmont was in full possession of the senses of sight and hearing when he undertook this perilous enterprise. The fact that he looked up and down the track before driving upon it, makes it probable that he hastily measured the distance between the train and the crossing and thought there was time for him to pass over the track before the train reached the crossing. Whether this was the case, or whether he was oblivious to the danger when he attempted to cross the track, the court correctly held him guilty of contributory negligence.

The crew of the train consisted of a conductor, an engineer, a fireman, a forward brakeman who was then upon the engine, and a rear brakeman who was upon the rear car. All these men were in their proper places on the train. The engineer testified, and his testimony was not disputed, that when the engine had passed through the bridge, and the smoke and steam had cleared away so that he could see to the crossing, he saw Guilmont within ten or fifteen feet of the track; that the horse seemed to stop an instant or two; that as soon as he saw him approaching the track he instantly shut off the

.steam, applied the emergency brake and sounded the danger whistle; that he did all that he could do to stop the train; that he could not have stopped it more quickly, and that he did all that could have been done to prevent a collision.

The engineer had a right to assume, when he saw the intestate driving toward the track, that he would not drive upon it in front of the train. He owed the intestate no duty until he saw him about to drive upon the track and that he was in peril. As the case shows that the engineer then used all the means in his power to stop the train and avoid the collision, the court erred in submitting any question to the jury. The defendant's motion for a verdict should have been granted.

*Judgment reversed and cause remanded.*