MARTIN FLINT'S ADMR. *v.* CENTRAL VERMONT RAILWAY COMPANY.

October Term, 1906.

Present:   ROWELL, C. J., TYLER, MUNSON, WATSON, HASELTON, and
POWERS, JJ.

Opinion filed July 2, 1909.

*Railroads—Construction of Statute—"Into," "Through"—*
*Negligence—Railroad Crossings—Duty of Traveller—Last*
*Clear Chance—Concurrent Negligence.*

V. S. 3921, penalizing the running of a detached locomotive, or one with
a passenger train attached, "into" or "through" a passenger depot
at a speed exceeding four miles an hour, applies only to passenger
depots so constructed as to cover the main tracks of the railroad,
and through which trains running on such tracks must pass.

It is the duty of a traveller nearing a railroad crossing at grade
to look and listen for approaching trains, and to make such
vigilant use of his sight and hearing as a prudent man would
make in the same circumstances.

In an action for the death of a traveller killed at a railroad crossing
by collision with a train, evidence examined, and *held* that de-
ceased was guilty of contributory negligence as matter of law.

Decedent, having neared a railroad crossing without looking for an
approaching train, discovered it as his horse stepped on the cross-
ing. The horse was under complete control and undisturbed by
the noise. The accident could have been prevented by backing
the horse three or four feet, but decedent, after partly stopping the
horse, urged it forward; and the engineer did everything possible
to avert the accident after discovering decedent's peril. *Held* that,
even if the engineer was negligent in not seeing the horse before
it reached the crossing, decedent's continuing negligence of the
same degree as the engineer's would bar recovery, since where
there is mutual negligence, and the negligence of each party is the
proximate cause of the injury, there can be no recovery.

CASE for negligence. Plea, the general issue. Trial by
jury at the March Term, 1906, Chittenden County, *Miles*, J.,
presiding. At the close of all the evidence the defendant moved

that a verdict be directed in its favor, on the ground that the evidence did not tend to show negligence on defendant's part, but showed that the deceased was guilty of contributory negligence as matter of law. Motion overruled, to which the defendant excepted. Thereupon, subject to defendant's exception, the court directed a verdict for the plaintiff for $650, it being agreed that the plaintiff was entitled to recover that amount, if entitled to recover at all. The opinion states the case.

*C. W. Witters, C. S. Palmer* and *R. E. Brown* for the defendant.

Decedent's death was due to his own neglect, and the case is clearly within the principles announced in the following cases: *Carter* v. *C. V. Ry. Co.*, 72 Vt. 190; *Magoon* v. *Boston & Maine R. R.*, 67 Vt. 177; *Guilmont's Admr.* v. *C. V. Ry. Co.*, 78 Vt. 185; *French* v. *Grand Trunk R. R. Co.*, 76 Vt. 441; *Corbin* v. *Grand Trunk R. R.*, 78 Vt. 458; *Gahagan* v. *B. & M. R. R.*, 70 N. H. 441.

The doctrine of the "last clear chance" has no application here for, if the engineer was negligent, the negligence of the deceased was concurrent and equally proximate. *French* v. *Grand Trunk Ry.*, 76 Vt. 441; *Magoon* v. *Boston & Maine R. R. Co.*, 67 Vt. 177; *Latremouille* v. *B. & R. Ry. Co.*, 63 Vt. 336; *Worthington* v. *Central Vt. Ry. Co.*, 64 Vt. 107.

*Cowles & Moulton* and *E. C. Mower* for the plaintiff.

V. S. 3921 applies to any kind of a passenger depot. A "depot" is a railway station, a place where passengers get on or off the cars, and where freight is received or delivered. *L. & N. R. Co.* v. *Com.*, 33 S. W. 939; *Fowler* v. *Trust Co.*, 21 Wis. 78; *State* v. *N. H. & N. Co.*, 37 Conn. 153, 163; Webster's International Dictionary, tit. Depot. The term includes not only the building, but the grounds used by the railroad in connection therewith. *State* v. *Ry. Co.*, 133 Ind. 69, 18 L. R. A. 502; *Pittsburgh, etc. R. Co.* v. *Rose*, 24 Ohio 219, 229.

The violation of this statute is at least a circumstance tending to show negligence on the part of plaintiff. *Kilpatrick* v. *G. T. R.*, 72 Vt. 263, 74 Vt. 288; *G. T. R.* v. *Ives*, 144 U. S. 408;

*Siddal* v. *Jansen,* 168 Ill. 43, 39 L. R. A. 122; *St. Ry. Co.* v.
*Murray,* 53 Ohio St. 87, 30 L. R. A. 508; *Mueller* v. *Railway Co.,*
21 L. R. A. 721; *Queen* v. *Dayton, etc. Co.,* 30 L. R. A. 82; *Neal*
v. *R. R. Co.,* 49 L. R. A. 684; Wharton on Negligence, §443;
1 Thomp. on Neg., 508, §8; Sherman & Redfield on Neg., §13;
Black, Law & Prac. in Acc. Cases, §278; 16 Am. & Eng. Enc. of
Law, 420. And besides, the failure of the engineer to discover
the deceased till his horse was about to step upon the crossing
tended to show shortage in his duty to keep a vigilant outlook.
*Johnson* v. *Chicago etc. Co.,* 48 Wis. 529; *Smith* v. *Norfolk &
So. R. Co.,* 114 N. C. 728, 25 L. R. A. 290.

Decedent's negligence if any, was not the proximate cause
of the accident, and so cannot bar recovery. *Fassett* v. *Town
of Roxbury,* 55 Vt. 552; *Vinton* v. *Schwab,* 32 Vt. 612; *Kane* v.
*No. Central Ry. Co.,* 128 U. S. 91; *Jones* v. *E. Penn. Ry. Co.,* 128
U. S. 443; Thayer's Cas. on Ev., 177. The doctrine of the "last
clear chance" is applicable here. *Trow* v. *Vt. Cen. R. R. Co.,*
24 Vt. 487; *Hyde, Admr.* v. *Jamaica,* 27 Vt. 443; *Davis & Gray*
v. *C. V. R. R. Co.,* 66 Vt. 290; *Lindsay, Admr.* v. *C. P. R.,* 68
Vt. 556; *Magoon* v. *B. & M. R. R. Co.,* 67 Vt. 177; *Templeton* v.
*Montpelier,* 56 Vt. 328; *Ploof's Admr.* v. *Burlington Traction
Co.,* 70 Vt. 509; *Willey* v. *B. & M. R. R.,* 72 Vt. 120.

WATSON, J. At the close of the plaintiff's evidence, the
defendant moved for a verdict on the grounds (1) that there
was no evidence tending to show negligence on the part of the
defendant, and (2) that the undisputed and unconflicting evi-
dence showed contributory negligence on the part of the intes-
tate. The case is here on exception to the overruling of this
motion. The facts herein stated appear from or are supported
by the evidence.

The intestate, a man about seventy-two years of age, while
driving across defendants' railroad track at a highway crossing
at West Berlin in the afternoon of May 18, 1905, was struck by
defendants' engine drawing the mail train, so-called, north-
bound, and instantly killed. The train was running at about
schedule rate of speed, forty-five miles an hour. The depot at
that place is a building about twenty-five feet in length and a
little less than that in width. It stands sixty-two feet south of
the crossing where the intestate was killed, wholly on the east

side of the main track and about nine feet from the east rail. There is a platform toward the track extending north and south beyond the building, the whole length of which is one hundred thirty-four feet. The northerly end of this platform comes to the highway. West Berlin is not a regular stopping place for any passenger trains. It is a flag station for some trains, but the one in question never stops there except to leave passengers coming from beyond Springfield, which happens only two or three times a year, and perhaps not at all for a year,—"once in a great while."

By section 3921 of Vermont Statutes, "If a person having control of a detached engine or an engine with a passenger train of cars attached, runs such engine or such passenger train into or through a passenger depot at a speed exceeding four miles an hour, he shall be fined ten dollars." Counsel for plaintiff contend that as the train at the time in question was being run at a greater rate of speed than is permitted by this statute, if not negligence as a matter of law it must at least be a circumstance which constitutes some evidence of negligence on the part of the defendant, citing *Kilpatrick* v. *Grand Trunk Railway Co.*, 72 Vt. 263, 47 Atl. 827, 82 Am. St. Rep. 939; same case, 74 Vt. 288, 52 Atl. 531, 93 Am. St. Rep. 887; *Grand Trunk Railway Co.* v. *Ives*, 144 U. S. 408, 36 L. ed. 485, 12 Sup. Ct. 679; and other cases. Except that this section of the statute is applicable no claim is made that the speed of the train was excessive.

The law of section 3921 was first enacted in 1860. At that time there were in this State and hitherto have been passenger depots so constructed as to cover over the main tracks of the railroad, into and through which trains running on such tracks must pass. We think that statute was intended to apply only to such depots. It is difficult to see how the words "into or through" as there used can have reference to passenger depots of any other construction. "Into" is there used in the sense of inside of; within. It expresses entrance, or a passing from the outside of a thing to its interior parts. The word "through" means from end to end, or from side to side of; into or out of at the opposite, or at another point; between the sides or walls of; within; as to pass through a door, or to go through an avenue. See Webster's International Dictionary.

The intestate was a peddler driving a single horse hitched to an open wagon with a small box containing his goods fitted into the rear end of the wagon body. East of the crossing in question, the highway over which he was travelling is a gradual ascent to the railroad. At a distance of three hundred twenty-eight feet east of the east rail, a person travelling over the highway toward the crossing has a plain view of the railroad track from the depot southerly some fifteen hundred or sixteen hundred feet. The track there is elevated considerably above the level of the land and is in plain view for the whole distance to the crossing except as the vision is obstructed by the depot. Going westerly from a point in the middle of the road forty-one feet east of the east rail to the crossing, the view of the track southerly is thus obstructed until within twenty-four feet of the east rail. There the track can be seen past the westerly end of the building for a distance of one hundred fifteen feet; at twenty feet from the east rail, the track is visible for a distance of one hundred sixty and one-half feet; and when within sixteen feet, the track is in full view practically as far southerly as it is from any place hereinbefore named.

It was conceded by the plaintiff in argument that all signals required by law and more were given on the train. When the engine was about half way between the whistling post for the crossing and the station the engineer, looking beyond the depot on its easterly side, saw the intestate on the highway driving toward the railroad. Thereupon he sounded a second whistle for the crossing. The team about the same time went behind the depot and was seen no more by the engineer until it was on the crossing in front of the engine.

It is argued that the engineer should have seen the team after it came in view on the westerly side of the depot before it went on the crossing and in season to have prevented the accident, and that a failure so to do is a circumstance from which a jury may infer negligence. We will assume, without deciding, this to be so and pass to the question of contributory negligence.

The undisputed evidence shows that the intestate's senses of sight and hearing were good; that he was in good health and very active; that the day of the accident was warm and pleasant and there was nothing over his ears to prevent him from hearing; that the horse he was driving was twelve or thirteen years old,
18

very quiet, easy to manage, and not easily frightened by a train of cars or anything; and that during the last six or seven years of his life he averaged to drive over the crossing in question once in four or five weeks, by reason of which he was acquainted with the railroad in that vicinity, also with the crossing and its surroundings. The horse was walking at a fair gait in the middle of the road as it went past the depot and approached the crossing. The intestate was looking at the horse and did not look up the track southerly until the horse was partly on the crossing. When the horse was some five or ten feet from the track, two witnesses who were on the opposite side of the track and a short distance away, saw the intestate driving toward the crossing and hallooed to him saying "The cars are coming," at the same time throwing up their hands to attract his attention; but the noise from the train was such that the witnesses were not sure that he heard their voices, nor did they know that he saw their demonstrations. The point where the intestate's view was first obstructed by the depot is about forty-one feet east of the east rail, and from there in the middle of the travelled road, the track is visible six hundred feet southerly, and a moving train of cars can be seen one thousand feet further. When the intestate was sixteen feet from the east rail, the approaching train must have been plainly in view, and the horse yet a distance of four feet from the nearest rail. A stop might have been made at this place of safety until the train had passed. But instead of thus avoiding the danger, the intestate without making vigilant use of his senses of sight and hearing, recklessly drove on the crossing in front of the train.

The rule making it the duty of a traveller, nearing a railroad crossing, to look and listen for approaching trains, and to make such vigilant use of his sight and hearing in so doing as a careful and prudent man would make in the same circumstances was fully laid down in *Manley* v. *Delaware & Hudson Canal Co.,* 69 Vt. 101, 37 Atl. 279, also in *Carter* v. *Central Vermont R. R. Co.,* 72 Vt. 190, 47 Atl. 797, and need not be here repeated. In the latter case it is said that if by the vigilant use of his eyes and ears the plaintiff might have discovered and avoided the danger, and omitted such vigilance, he was guilty of contributory negligence; and that he was chargeable with such knowledge of the approach of the train as he might have ob-

tained by the exercise of that degree of care, which in the circumstances of danger, he was bound to use. There seems to be no escape from the conclusion that the intestate was guilty of negligence which contributed to the accident and precludes a recovery by the plaintiff, unless the evidence tends to show the defendant guilty of such subsequent negligence as in the circumstances renders it liable.

It is urged by the plaintiff that when the intestate's horse first came in view on the westerly side of the depot, it was visible to the engineer and would have been seen by him had he been in the exercise of requisite care, before the intestate, sitting twelve feet back from the horse's head, could look past the depot and see the approaching train; that consequently the defendant had the last clear chance to avoid the collision; and that since the engineer was negligent in failing thus to see the team, this negligence was the proximate cause of the accident, and the negligence on the part of the intestate in driving on the crossing was remote and will not defeat a recovery.

Again assuming that the defendant was negligent in not thus seeing the intestate before he drove on the crossing, yet it does not follow that the last clear chance was with the defendant. On the contrary, the undisputed testimony of the witnesses who saw the accident shows that the intestate had an equal opportunity to avoid a collision. We have already noted the intestate's negligence in driving on the track without first making proper use of his senses to ascertain whether there was approaching danger. So far as the evidence shows he did not look to see whether a train was coming or not until his horse was just stepping on the crossing, or its forward feet were on the plank of the crossing. The horse was still walking, was undisturbed by the noise of the train, and was under the complete control of the intestate. On seeing the train, the intestate at first partly stopped the horse, or pulled it back, as though to back up, and then urged it forward. At that time the accident could have been prevented by backing the horse three or four feet off the crossing to a place of safety. This the intestate had time to do, for in fact the team subsequently moved forward at a walk far enough to place the horse entirely over the crossing before the collision, by reason whereof it escaped injury. Thus it clearly appears that the intestate's negligence was continuous to the

time when the engineer discovered the team on the track, after which everything possible was done by the defendant's servants in the management of the train to prevent a collision. So even though as assumed the engineer was negligent in not seeing the team after it was visible on the westerly side of the depot before the time when it was no longer possible for him to avoid the accident, the intestate's negligence was of the same degree and concurrent during all of the same time—to say nothing of his negligence later—and no recovery can be had. In *Trow* v. *Vt. Central R. Co.*, 24 Vt. 487, 58 Am. Dec. 191, upon examination of authorities it was held that when there has been mutual negligence, and the negligence of each party was the proximate cause of the injury, no action can be sustained, and this is the established doctrine.

It follows that the motion for a verdict should have been granted.

*Judgment reversed, and judgment for the defendant to recover its costs.*

MUNSON, J., concurs in the result.