LILLA E. HAZEN'S ADMR. *v.* RUTLAND RAILROAD COMPANY.

February Term, 1915.

Present: MUNSON, C. J., WATSON, HASELTON, AND POWERS, JJ., AND STANTON, SUP. J.

Opinion filed May 10, 1915.

*Railroads—Accident at Crossing—Contributory Negligence as Matter of Law—Last Clear Chance.*

In reviewing the denial of defendant's motion for a directed verdict, the evidence must be viewed in the light most favorable to plaintiff.

When a person is so near a railroad track as to be in peril because of an approaching train of which he has actual or imputed knowledge, the law does not nicely consider whether he takes the wisest course to save himself.

Where one, while driving towards a railroad-highway crossing at grade at a speed of six or eight miles an hour, and when 60 feet away from the track, saw a train approaching at a speed of between 40 and 60 miles an hour, and then advanced to within 35 to 40 feet of the track, whereupon she whipped up her horse and drove upon the track at a speed of eight or ten miles an hour and was killed by the train she was guilty of contributory negligence, as matter of law.

Because it is a matter of universal experience that one cannot estimate the speed of an object coming approximately directly towards him so well as that of one passing at a favorable distance, that incapacity has no bearing on the question of decedent's contributory negligence in the circumstances.

In an action for the wrongful death of plaintiff's intestate, where it appears that the negligence of the intestate and that of plaintiff were concurrent and operative at the time of the accident, and each contributed to it, there is no room for the application of the doctrine of the "last clear chance," and plaintiff cannot recover.

CASE for negligence. Plea, the general issue. Trial by Jury at the September Term, 1913, Windham County, *Miles,* J., presiding. Verdict and judgment for the plaintiff. The defendant excepted. At the close of all the evidence the defendant's motion for a directed verdict was denied, to which it excepted. The opinion states the case.

*E. W. Lawrence* and *T. W. Moloney* for the defendant.

*Hugh H. Henry, Clarke C. Fitts* and *Hermon E. Eddy* for the plaintiff.

HASELTON, J. This is an action on the case brought by Charles R. Hazen as administrator of the estate of his sister, Lilla E. Hazen, to recover damages to her next of kin, brothers, caused by her being killed in a collision at a highway crossing over the defendant's railroad June 8, 1912. Trial was by jury and verdict and judgment were for the plaintiff.

At the close of the evidence the defendant made a motion for the direction of a verdict in its favor which was overruled, and the defendant excepted. This exception is the only one relied upon by the defendant in this Court; and the only ground on which the defendant, in its brief, claims that its motion should have been granted is that, as matter of law, there was no evidence from which it could be fairly and reasonably inferred that the plaintiff's intestate was free from contributory negligence.

The crossing in question is northerly from the station at Chester and about 600 feet distant therefrom. The highway crosses the track diagonally and just before the accident Miss Hazen and a sister were driving over the highway from the south-

west to the northeast at a speed of from 6 to 8 miles an hour.
The sister was Mrs. Seviour, whose administrator brought a suit
in which the verdict of the jury was in favor of the defendant,
88 Vt. 107, 91 Atl. 1039. Chester is a station at which all
passenger trains stop and all regular freight trains. The train,
if such it be called, which collided with the team was about 100
feet long and consisted of a pay-car drawn by the Nehasane.
The Nehasane is an engine with an observation car built over
it and somewhat resembles a passenger car. It makes irregular
trips over the road about once a month. The witnesses differed
as to the rate of speed of the train on this occasion, and as to
whether the crossing signals were given, but viewing the evi-
dence in the light most favorable to the plaintiff, it must be
taken, in considering the defendant's motion for a verdict, that
the crossing signals were not given, that the signaling and want
of signaling indicated that the train was to stop at the station;
that the rate of speed was as high as 50 miles an hour, perhaps
somewhat higher, for one witness gave it as his opinion that the
train was going 40 or 50 or 60 miles an hour.

Miss Hazen had lived for about 20 years in a house a few
rods from the crossing. That was her home at the time of the
accident, though for some years she had been away from home
part of the time. She was familiar with the crossing and its
surroundings, and on the other hand she must be taken to have
been familiar with the railroad signals and their significance.

Miss Hazen, who was driving, was about 40 years of age
and of good hearing and eyesight. The day was clear.

The plaintiff's claim is that when the train came in sight
by the station the team may have been within 60 feet of the
crossing, and we consider that there was some evidence to sub-
stantiate this claim.

The occupants of the wagon were looking southward along
the track in the direction from which the train came, according
to all the testimony, and they must have seen it when it came in
sight. The team was trotting at the rate of 6 or 8 miles an hour
before and immediately after Miss Hazen must have seen the
train. But after going a little further and when within about
35 or 40 feet of the track over which the train was coming,
measuring along the highway, or perhaps less, perhaps not more
than 20 to 25 feet, Miss Hazen whipped up the horse so that it
went upon the track at a speed of 8 to 10 miles an hour. She

was watching the train and must have seen it, when she was in a position of entire safety. At the point where she whipped up the horse it is clear that she apprehended that in order to get safely across a higher rate of speed might be necessary.

Where a person is so near the track over which a train is coming when he sees the train, or must be taken to see it, that he is then in a perilous position, the question of whether in such an emergency he takes the wisest course in attempting to extricate himself from peril is one that the law does not nicely consider. Cases of that character are *Boyden's Admr.* v. *Fitchburg R. Co.*, 72 Vt. 89, 47 Atl. 409, and *Sherwin* v. *Rutland R. Co.*, 74 Vt. 1, 51 Atl. 1089.

But it cannot be considered as open to question that the plaintiff was not in a position of peril when she got a fair view of the approaching train. When nearer the track, however, she whipped up the horse, using either a whip or lines, and made an attempt to cross the track before the approaching train, which she must have then known was approaching. There is no room for the inference that in driving from a place of safety onto the track she was free from contributory negligence. *Labelle* v. *Central Vermont Ry. Co.*, 87 Vt. 87, 88 Atl. 517; *Flint's Admr.* v. *Central Vermont Ry. Co.*, 82 Vt. 269, 73 Atl. 590; *Guilmont's Admr.* v. *Central Vermont Ry. Co.*, 78 Vt. 185, 62 Atl. 54; *French* v. *Grand Trunk Ry. Co.*, 76 Vt. 441, 445, 58 Atl. 722; *Carter* v. *Central Vermont Ry. Co.*, 72 Vt. 190, 195, 47 Atl. 797; *Harrington* v. *Rutland R. Co.*, 89 Vt. 112, 94 Atl. 431; *Railroad Co.* v. *Houston*, 95 U. S. 697, 702, 24 L. ed. 542; *Northern Pacific R. Co.* v. *Freeman*, 174 U. S. 379, 383, 384, 43 L. ed. 1014, 19 Sup. Ct. 763; *Elliott* v. *Chicago &c. Ry. Co.*, 150 U. S. 245, 37 L. ed. 1068, 14 Sup. Ct. 85; *Schofield* v. *Chicago &c. Ry. Co.*, 114 U. S. 615, 29 L. ed. 224, 5 Sup. Ct. 1125.

The plaintiff suggests slight obstacles in the way of turning out of the highway either to the right or to the left. We have not discussed this feature of the case, for the obviously safe thing for the plaintiff's intestate to do after she knew that the train was approaching, and while she was in a place of safety, was to rein up the horse. The testimony was that she was a good reinswoman.

The plaintiff calls attention to the character of the horse and argues somewhat from that. The horse was 16 or 17 years old and had been driven by the plaintiff's uncle for many years.

7

The plaintiff used the horse regularly on a mail route. The plaintiff's intestate had driven it somewhat. There was testimony that it was a fair driver, and when excited was hard on the bits; that when "close" to trains it was excited and would try to get away. But the accident here was not due to any such conduct or character on the part of the horse. The horse was observed by three witnesses and all agreed that it trotted along at 6 or 8 miles an hour, and did not change its pace of its own accord, but that it went faster only when it was whipped up by the driver.

The plaintiff points out, what is necessarily true, that since the highway crossed the track diagonally the team was, at the times material to this case, considerably nearer to the track measuring at a right angle to it, than measuring along the highway. From this fact the plaintiff argues that the visual perspective of the plaintiff must have been such that in looking at the train she could not well appreciate the rapidity of its motion. It is, of course, a matter of universal experience that the speed of any object coming approximately towards one cannot be so well estimated as that of one passing by at a favorable distance. And because this is a matter of universal experience, it has no bearing upon the question of contributory negligence. People standing, as they often do, 6 or 8 feet from a track over which a train is coming are ordinarily in a position of safety, and, if they advance from such position upon the track and are injured, the fact that in consequence of this physical law they did not accurately estimate the speed of the on-coming train cannot be considered on the question of contributory negligence.

We conclude, from a reading of the entire transcript with reference to the claims of counsel, that there was no evidence from which it could be fairly and reasonably inferred that the plaintiff's intestate was free from contributory negligence which was a proximate cause of the accident.

In the companion case of *Seviour's Admr.* v. *Rutland R. Co.*, 88 Vt. 107, 91 Atl. 1039, it was held that there was no evidence calling for a consideration of the doctrine of the last clear chance. The plaintiff does not claim in his brief that the doctrine has any application here.

The evidence most favorable to the plaintiff discloses a case of concurrent negligence, and, therefore, there can be no re-

covery since, without legislation, we are not permitted to apply the doctrine of comparative negligence.

*Judgment reversed and judgment for the defendant to recover its costs.*