ARTHUR L. MILLER *v.* CENTRAL VERMONT RAILWAY COMPANY.

Special Term at Brattleboro, February, 1920.

Present: WATSON, C. J., POWERS, TAYLOR, MILES, and SLACK, JJ.

Opinion filed April 28, 1921.

*Railroads—Tractor Operator Negligent in Failing to Look—Last Clear Chance Doctrine Stated—Doctrine Applied—Motion to Direct Verdict—Evidence Viewed in Light Most Favorable to Opposing Party—Care to Be Exercised by Railroads*

*and Travelers at Grade Crossings—Trainmen May Assume that Traveler Will Avoid Injury—Case Where Question of Last Clear Chance for the Jury.*

1. Where plaintiff's farm tractor ran off the highway and stopped in a safe place after crossing a railroad track, plaintiff was negligent in backing it onto the track so that it was hit by a train which he could have seen before he moved the tractor had he looked.

2. The doctrine of the last clear chance is that, when the negligence of the defendant is proximate, and that of the plaintiff is remote, an action can be maintained.

3. The fact that the plaintiff was negligent in getting onto the track and remaining there would not bar a recovery, if the defendant, in the exercise of due care, had an opportunity to avoid injuring him after he could not avoid being injured.

4. In reviewing a defendant's motion for a directed verdict, conflicting evidence must be considered in the light most favorable to the plaintiff.

5. A railroad company in running its trains must exercise care according to the circumstances, and, where its track crosses a much-traveled street or highway, it, as well as the public, must exercise a degree of care commensurate with the danger.

6. Those in charge of a train have the right to assume that a person on the track will get off in season to avoid being injured; and how long they can rest on this assumption is for the jury to say in the circumstances of the case.

7. There being evidence that the trainmen, in the exercise of due care, could have stopped the train and avoided the accident, the question of last clear chance was for the jury.

ACTION OF TORT for negligence. Plea, the general issue. Trial by jury at the September Term, 1918, Windham County, *Butler*, J., presiding. Verdict and judgment for the plaintiff. The defendant excepted. The opinion states the case.

*J. W. Redmond* and *W. R. McFeeters* for the defendant.

*Barber, Barber & Miller* for the plaintiff.

SLACK, J. The action is tort to recover for injuries to the plaintiff and damages to his farm tractor caused by a collision

with one of the defendant's regular passenger trains at a grade crossing about one-fourth mile north of Vernon station, on the morning of April 13, 1917.

At the close of all the evidence the defendant moved for a directed verdict on the grounds: (1) That there was no evidence tending to show negligence on the part of the defendant; and (2) that the plaintiff was guilty of contributory negligence as a matter of law. The motion was overruled, and the defendant had an exception. This exception we will now consider.

The track for some distance in each direction from the crossing runs north and south. The plaintiff's house stands a few rods south of the crossing and west of the track. To get from his yard onto the highway and follow that east across the track it is necessary to make a sharp and continuous turn to the right. The morning of the accident the plaintiff drove the tractor from his yard onto the highway and followed that over the crossing, but, owing to the curve in the highway just east of the track, and his inability to guide the tractor, he ran it off the north side of the highway and against a log, causing it to stop.

The evidence was conflicting as to where the tractor then stood with reference to the defendant's track, but it appeared that it was where it would not have been hit by a passing train. The plaintiff testified that he thought the rear of it, which was the part nearest the track, was five or six feet from the east rail, and that he knew the projection of the train beyond the rail was two feet. So that while the tractor stood where it first stopped it was not only in a safe place, but the plaintiff knew that fact. The case turns, therefore, on what occurred subsequently.

The train in question was running on schedule time the morning of the accident. The plaintiff testified that he knew when it was due at the crossing, and knew in a general way the number of trains and amount of traffic over the defendant's road, that he was at the time an able bodied man, and that his senses of sight and hearing were good. His evidence, which was estimates only, tended to show that from the crossing, and from any point ten or twelve feet east of it, there was an unobstructed view of the track north at least 1,600 feet. It appeared from actual measurements that this distance was more than 2,000 feet.

[1] The plaintiff testified, in substance, that after the tractor struck the log one Wright tried to move the log, but was unable to do so; that plaintiff looked for the train while Wright

was thus engaged, and, not seeing it, decided to back the tractor away from the log, and did so as soon as he could start it, which took from half a minute to a minute. It did not appear that he looked for the train again until the tractor was on the track and the train within 15 or 20 feet of the crossing. The evidence all tended to show that when the tractor moved away from the log the train was where the plaintiff could have seen it had he looked. This being so, he was negligent in backing onto the track in the way he did, and his case must fail unless saved by the last clear chance doctrine. *Harrington* v. *Rutland Railroad Co.*, 89 Vt. 112, 94 Atl. 431; *Flint's Admr.* v. *Central Vermont Ry. Co.*, 82 Vt. 269, 73 Atl. 590; *French* v. *Grand Trunk Ry. Co.*, 76 Vt. 441, 58 Atl. 722; *Carter* v. *Central Vermont R. R. Co.*, 72 Vt. 190, 47 Atl. 797; *Trow* v. *Vermont Central R. R. Co.*, 24 Vt. 487, 58 A. D. 191.

[2, 3] The doctrine of the last clear chance may be stated thus: When the negligence of the defendant is proximate, and that of the plaintiff is remote, an action can be sustained. Therefore, if there be negligence on the part of the plaintiff, yet, if at the time when the injury is committed it might have been avoided by the defendant by the exercise of reasonable care and prudence and could not then be avoided by the plaintiff by the exercise of such care and prudence, an action will lie. So the fact that the plaintiff was negligent in getting onto the track and in remaining there will not bar a recovery if the defendant in the exercise of due care had an opportunity to avoid injuring him after he could not avoid being injured. At the moment the plaintiff's ability to avoid the accident ceased, his negligence became remote; and that of the defendant then became proximate if at the same moment or later it could by the exercise of reasonable care and prudence have avoided the accident, and failed to do so.

This Court held in *French* v. *Grand Trunk Railway Co.*, *supra*, relied upon by the defendant, that the evidence did not make a case for the jury on the question of last clear chance. There the plaintiff was crossing the defendant's track, at a public crossing, on foot, and was struck as he was stepping over the last rail. The evidence showed that when he went upon the track the train was so near the crossing that it was impossible for those in charge of it to stop it in season to avoid the accident. This fact was emphasized by the Court in the following lan-

guage: "He could have seen the danger and avoided it at a time when it was too late for the defendant's servants to stop the train and avoid a collision. There was no time when the defendant's servants could have stopped the train and avoided the injury, in which the plaintiff could not have avoided being injured by a vigilant use of his eyes, ears, and physical strength."

So, too, in *Flint's Admr.* v. *Central Vermont Ry. Co., supra,* we held that the evidence did not raise a jury question under the last clear chance doctrine. There the intestate drove upon the track with a single horse hitched to an open wagon. The horse was, "very quiet, easy to manage, and not easily frightened by a train of cars or anything," and as it approached the crossing "was walking at a fair gait in the middle of the road and was under the complete control of the intestate." Ever after the intestate was within sixteen feet of the crossing he had an unobstructed view of the track in the direction from which the train was approaching for fifteen hundred or sixteen hundred feet. He was in full possession of all his faculties, yet he took no means to discover the train until his horse's feet were on the crossing. He then saw the train, and at first partly stopped his horse, or pulled it back, as though to back up, and then urged it forward. He then had ample time to have backed off the track to a place of safety. Instead of doing so, however, he drove upon the crossing with full knowledge that the train was approaching, and then so near the crossing that it reached it before his wagon got over the track.

In *LaMountain's Admx.* v. *Rutland Railroad Co.,* 93 Vt. 21, 106 Atl. 517, the deceased, at the time of the accident, was engaged in snowing a crossing. He obtained the snow for this purpose at a point about twenty feet from the crossing, carried it on a shovel to the place where he wanted it, deposited it, and returned for more. The engineer and a brakeman who sat in the fireman's seat saw the deceased and understood what he was doing, and when he approached the crossing the last time, and was ten or twelve feet from it, did all that was possible to stop the train. Referring to the evidence on this point, the Court said: "There was no evidence in the case fairly and reasonably tending to show that the defendant's servants, after they realized, or ought to have realized, LaMountain's peril failed to do all in their power to save him." The deceased was unincumbered in any way, and, so far as appeared, was in full possession of all his

faculties, and a proper use of them would have saved him. The right to recover was denied.

In none of these cases did the evidence tend to show that the last clear chance was with the defendant; that is, that the defendant, by the exercise of reasonable care and prudence, might have avoided injuring the plaintiff, or deceased, after it was too late for him to avoid being injured.

There was no evidence in the instant case that the persons in charge of the train actually saw the plaintiff after the tractor stood at the log, but this was not necessary to a recovery. If sufficient time elapsed after the plaintiff entered the danger zone so that it can be fairly said that the trainmen in the exercise of the care and diligence of a careful and prudent person ought to have discovered and comprehended his peril in season to have avoided the accident, knowledge will be imputed to them.

[4]   While the evidence as to where the train was when the plaintiff stopped the tractor on the track was conflicting, under this motion, it must be considered in the light most favorable to him. *Rice et al* v. *Bennington County Savings Bank*, 93 Vt.. 493, 108 Atl. 708.   He testified that after he backed away from the log he made a stop of two or three seconds before he backed onto the track; that it was forty seconds from the time he so stopped until the train struck the tractor.   Assuming that it took two seconds to back from the place where he stopped after he started away from the log to the place where he stopped on the track, the tractor must have been on the track thirty-five seconds before it was hit by the train.

The evidence tended to show the speed of the train to be twenty to twenty-five miles an hour; that, if moving at the former speed, it could have been stopped in going 200 feet, and, if moving at the latter speed, it could have been stopped in going 240 feet.   If running at either speed, it could have been stopped in less than seven seconds.   Those in charge of the train therefore had twenty-eight seconds in which to discover the plaintiff's peril and take steps to avoid injuring him before action for that purpose was necessary.

[5]   It appeared that the engineer and fireman were at their respective windows in the cab of the locomotive, and that the fireman, at least, from his position had an unobstructed view of the crossing ever after the train reached the whistling post, a distance of eighty rods; and the evidence tended to show that

nothing was done to stop the train until it was within twenty or twenty-five feet of the crossing, when the fireman "hollered" to the engineer, and the latter applied the brakes.

Moreover, the train was approaching a public crossing where people had a right to pass and did pass frequently. This increased the risk of danger from collision and increased correspondingly the degree of care and diligence required of the trainmen in the performance of their duty to look out for persons who might be in peril at this crossing. A railroad company in running its trains must exercise care according to the circumstances, and where its track crosses a much-traveled street or highway, the company, as well as the public, is bound to exercise a degree of care commensurate with the danger.

[6]    The law, to be sure, did not require those in charge of the train to act on the assumption that the plaintiff was going to remain on the track until the train reached the crossing. For a time they had a right to assume that he would get off in season to avoid being injured. *Guilmont's Admr.* v. *Central Vermont Ry. Co.,* 78 Vt. 185, 62 Atl. 54. But how long they could rest on this assumption was for the jury to say in the circumstances of the case. *LaMountain's Admr.* v. *Rutland Co., supra.*

[7]    It appeared that the plaintiff was standing on the floor of the tractor in front of the seat and back of the control levers, and that the rear of the tractor was practically over the east rail, that it was difficult to get off the tractor except at the rear, and that to get off at the rear it was necessary to pass around the seat, through a passageway about two feet wide. As the tractor then stood, to get off at the rear the plaintiff would have been obliged to pass in front of the approaching train. He had less than seven seconds in which to act after the train reached the point where, in the exercise of due care, the defendant's servants could have stopped it and avoided the accident. It cannot be said as a matter of law that this was sufficient time, in the circumstances, in which to reach a place of safety.

We think the circumstances disclosed by the evidence were such that the jury was justified in finding that the defendant's servants, in the exercise of due care and prudence, could have avoided the collision after a time when the plaintiff was powerless to save himself.

The defendant saved some exceptions to the charge, which, if sustained would result in a retrial. It says, however, that it

does not desire a retrial if we hold that the plaintiff is entitled to recover for personal injuries; therefore these exceptions are not considered.

*Judgment affirmed.*