Argued December 13, 1923, reversed February 13, 1924.

# CHARLES M. MORSER *v.* SOUTHERN PACIFIC CO. and W. F. SCHELLENBURG.

### (222 Pac. 736.)

**Railroads—Pedestrian Crossing in Front of Approaching Car Held Guilty of Contributory Negligence.**

1. Where a pedestrian, while crossing defendant's track at a lane crossing during a heavy fog, as he was about to step on the track, saw what he supposed to be a car approaching at the rate of thirty miles an hour, forty or fifty feet away, and, instead of turning back, attempted to cross ahead of the car and was struck by the overhang on the opposite side, *held,* that he was guilty of contributory negligence as a matter of law.

**Negligence—Last Clear Chance Doctrine Stated.**

2. To make the last clear chance doctrine applicable, it must appear that defendant actually saw the dangerous situation of plaintiff in time to have avoided injury to him.

From Multnomah: Robert G. Morrow, Judge.

Department 1.

REVERSED.

For appellants there was a brief over the name of *Mr. Ben C. Dey,* with an oral argument by *Mr. Roscoe C. Nelson.*

For respondent there was a brief over the names of *Messrs. Davis & Farrell* and *Mr. Henry E. McGinn,* with an oral argument by *Mr. W. E. Farrell.*

BURNETT, J.—The plaintiff sues for damages resulting from an injury inflicted upon him by one of

---

1. Application of last clear chance rule to injury sustained by person standing or walking close to railroad track, see note in Ann. Cas. 1912B, 1242.

Doctrine of last clear chance as affected by question whether negligence of plaintiff, or deceased and defendant was concurrent, see notes in Ann. Cas. 1912B, 888; 7 L. R. A. (N. S.) 132; 7 L. R. A. (N. S.) 152; 17 L. R. A. (N. S.) 707; 19 L. R. A. (N. S.) 446 (and references); 27 L. R. A. (N. S.) 379.

the defendant company's trains, while, as a pedestrian, he was crossing its track. As to the place of the accident, it appears by the record that the track runs parallel to the west bank of the Willamette River. The plaintiff, at the time, was living in a house-boat on the river east of the railroad track and had resided there for about eight years prior to the accident. During all that time he crossed the track daily going to and from his work and was quite familiar with the situation and surroundings. He alleges that on the morning of October 18, 1921, while he was crossing the track, a train operated by the defendant company and its codefendant motorman, Schellenburg, ran into him and struck him, and that at the time of the accident there was an extremely heavy fog along the right of way where the accident occurred. He charges negligence against defendants as follows:

"Plaintiff alleges that defendants were then and there careless and negligent in the following particulars, to wit:

"(a) That said defendants then and there carelessly and negligently operated said train, in view of the character of the crossing, and the heavy fog then and there existing at said place, at a high and reckless rate of speed, to wit, 30 miles per hour;

"(b) That said defendants carelessly and negligently failed to sound any warning or alarm in approaching said intersection to warn and advise individuals crossing said right of way at said intersection;

"(c) That said defendant then and there carelessly and negligently failed to have its train under control."

After describing his injuries he concludes with the usual demand for judgment against the defendants.

By the answer, the negligence is denied as well as some other matters in the complaint not necessary to

be further described. Giving their version of the affair, the defendants say that at about the hour of 5:45 o'clock in the morning of October 18, 1921, they were operating a car along said track; that it was dark at the time but the headlight on the car was burning so that it could be seen a long distance in front. Contributory negligence is charged against the plaintiff in this language:

"That said engineer blew the whistle and rang the bell for the station at Fulton, and the motor-car then proceeded toward Cemetery Station; that when the car was but a short distance from the point where said lane crosses Southern Pacific Company's right of way, plaintiff suddenly and unexpectedly came out on the railroad track in front of the car; that the engineer seeing plaintiff immediately put on the brakes, bringing the car to a stop in the shortest distance possible, but that the distance between plaintiff and the car at the moment plaintiff stepped on to the track was so short that the engineer was unable to avoid an accident; that plaintiff was struck by the right front corner of the motor-car.

"That plaintiff was thoroughly familiar with the existence of said lane crossing, and well knew that trains ran on said track, but he nevertheless approached and went upon said track at the time of the accident hereinbefore mentioned without exercising due care in regard to the danger of being struck by trains, and in a careless, negligent and reckless manner in the following particulars, to wit: That plaintiff attempted to cross said railroad track without stopping, looking or listening for the approach of cars along same; that plaintiff paid no attention to the blowing of the whistle, and ringing of the bell on the motor-car for Fulton Station, although the sound of same was within audible distance of plaintiff; that plaintiff totally disregarded the noise of the approaching car; that plaintiff gave no regard to the rays of the headlight on the car, which rays were focused on

the lane crossing while the car was yet a considerable distance therefrom.''

The concluding paragraph of the answer attributes to his negligence all the injuries plaintiff may have sustained in the accident.

The new matter of the answer is traversed in material particulars by the reply. The plaintiff was the only witness on his behalf who described the accident. The following are excerpts from his testimony:

''I went up the steps and went to the gate, opened it, listened and looked in both directions, heard nothing and went through and closed it. After going part way I looked again to the north and to the south and seen nothing. As I was to step on the track I looked to the north and I saw an object glance before me, it looked like a shadow, but being such a dense fog and at the rate of speed it was traveling I could not judge the distance of how far it could be away from me. I realized it must be a car and hastened to cross the track and as I was leaving the track on the opposite side I was struck by the far side of the car, in the hip.

''Q. Now you spoke of passing out of the gate; I will just get you to tell the jury again about what you did in the way of looking for the car.

''A. Before leaving the gate I looked in both directions, listened, heard nothing. After taking a couple of steps, I listened again and looked and there was nothing in sight. It was a dense fog, and I started on to cross the track, going to work. Realizing there was an object in front of me as I was about to step on the track, I looked and there was something pressing down on me, presumably to be the car. As I had no time to turn, I jumped across and was leaving the track on the opposite side when I was struck. * *

''Q. Now, the distance that the car ran after it hit you, and your observation as a street-car man, how fast would you say this car was running?

"A. Thirty miles, or better. * *

"Well, you don't want to tell the jury you would step on the track, after seeing it, unless you did have some idea how far it was, do you?

"A. I should judge better than forty or fifty feet.

"Q. Better than that; you mean more than that?

"A. Yes, sir; more than that.

"Q. You don't think it could have been less than forty or fifty feet?

"A. I should not think so, no, sir.

"Q. You knew it would take you a couple of steps to get over that track, didn't you?

"A. Yes; and I hastened my feet to get across.

"Q. Did it occur to you to step back and stop at that time?

"A. I didn't have time to step back. It was my object to get across.

"Q. Well, if you saw that coming as you were about to step on the track, what would have prevented you from stepping back; no obstruction?

"A. No obstruction, but you just had an idea it was far enough away to get across.

"Q. You thought you could get across?

"A. Yes, sir.

"Q. That is why you didn't step back?

"A. Yes."

"Q. You thought you could get across, that was your judgment?

"A. Yes."

At the close of the plaintiff's testimony the defendants moved for nonsuit on the grounds that the complaint does not state a cause of action and that the plaintiff's testimony shows him to have been negligent in a degree contributory to his injury and defeating his recovery. The motion was denied by the court. The same question was raised by a motion for directed verdict at the conclusion of all the testimony which was also overruled. The defendants appeal from a judgment on an adverse verdict.

As to the sufficiency of the complaint, in the absence of any showing that the crossing was a public one, or one resting in prescription, or that the plaintiff was more than a bare licensee, it may be well doubted if the defendants owed him any duty beyond refraining from willfully hurting him: *Long* v. *Pacific Ry. & Nav. Co.*, 74 Or. 502, 515 (144 Pac. 462, 145 Pac. 1068, L. R. A. 1915F, 1151). The complaint does not count on willful injury.

1. Passing, however, to the other branch of the motion for nonsuit, it is to be noted that the substance of the charge against the defendants is that they operated the train so fast and without warning plaintiff of their approach that they could not avoid colliding with him when he appeared on the track. The countercharge of negligence is in substance that the plaintiff so conducted himself as a pedestrian in going upon the track that he could not avoid the collision. We here have two bodies moving toward a point of contact. Each owes reciprocal duties to the other with this qualification, that the railway company, engaged in the service of the public and having acquired right of way for its tracks and the operation of trains thereon, has the preference of passage as against an individual who essays to cross over its track. It is a primary principle, controlling in such cases, that if the plaintiff is shown to be negligent in a manner contributing to the accident, he cannot recover. It is axiomatic that a railroad is a place of danger and one familiar with the situation as the plaintiff's testimony shows him to have been, knows full well that it is thus dangerous. If it is negligence on the part of the defendants to approach the place of meeting in such a manner that they cannot avoid collision, by the same token, considering the right of preference

already mentioned, it is negligence for the plaintiff to approach that same point in such a manner that he cannot avoid the collision. The testimony discloses that the track is four feet, eight and a half inches wide. The car itself is ten feet wide which would make an overhang of two feet, seven and three-quarters inches on each side. The plaintiff says in substance, that he saw an object approaching him and realized that it must be a car just as he was starting to cross the track, but that he hurried across and was struck just as he was leaving the track on the opposite side. In other words, supposing him to have been at the hither rail of the track, he preferred to travel seven feet, four and a quarter inches into the danger zone in front of the oncoming car, which he says was traveling at the rate of thirty miles an hour, rather than to step back two feet, seven and three-quarters inches into the zone of safety. In plain terms, he was racing with the train which he knew was approaching. By all the authorities this constitutes contributory negligence.

The case is governed by *Slusher* v. *Great Southern Ry. Co.*, 107 Or. 587 (213 Pac. 420). There the plaintiff was approaching a railroad track where his view was obstructed by a warehouse until he was practically on the track with his automobile in which he was riding, when the train struck him. Because a pedestrian has greater control over his movements, the rule of conduct is applied by some authorities more strictly to him than to one who is traveling in a vehicle and collides with a train. The court in an opinion by Mr. Chief Justice McBride in the Slusher case denied recovery. Here, the obstruction to vision was a fog and the testimony shows that the plaintiff saw the car forty or fifty feet distant in ample time

to have retreated the step that would have taken him into safety.

It seems that the Circuit Court denied the motion for nonsuit on the ground that when a person finds he is suddenly in a position of peril, he is not required to act with the same care and prudence as he would under other circumstances. The court left out of view the principle that the situation of peril must occur without any negligence on the part of the plaintiff. The reason for this rule is drawn from the doctrine of contributory negligence. As well might we hold that a man could lie down and go to sleep with his foot on the rail and excuse himself from negligence by saying that the noise of the train woke him up so suddenly that he was confused and instead of withdrawing his feet, scrambled farther on to the track. The case of *Farris* v. *St. Louis & S. F. R. Co.*, 167 Mo. App. 392 (151 S. W. 979), was a case quite similar in its circumstances to the one at bar. It is there said:

"When a traveler upon a highway, without fault on his part, is placed in a position of imminent peril at a railroad crossing, the law will not hold him guilty of negligence, though he did not select the very safest course; and this rule is especially applicable where the person was placed in such perilous position by the railroad company's negligence, as in failing to give proper signals. * *

"Do the facts justify the respondent in invoking this rule? We think not. The east end of the box-car was west of the path, and therefore there was nothing for at least thirty feet south of the main track, and all the deceased had to do, when he arrived within six feet of the main track, was to look to the southwest, and he would have seen the approaching train, and could have stepped back until it had passed."

In *Johnson* v. *Seaboard Air Line R. Co.*, 163 N. C. 431 (79 S. E. 690, Ann. Cas. 1915B, 598), the court said:

"If a traveler is without fault, or if his fault is either excused by some act of the company or is not the proximate cause of his injury, the company having the last clear chance, and if in attempting to cross a track on a highway he is suddenly confronted by a peril, he may without the imputation of negligence adopt such means of extrication as are apparently necessary, and is only held to such measure of care as a man of ordinary prudence would exercise in the same circumstances."

2. The phrase in this excerpt about the last clear chance, just quoted, gives rise to the suggestion that there is nothing in this record either in allegation or in proof to show that the defendants actually saw the dangerous situation of the plaintiff in time to have stopped the car and avoided injuring him. Under the holdings of this court, this is the essential requisite of the last clear chance doctrine: *Stewart* v. *Portland Ry., L. & P. Co.*, 58 Or. 377 (114 Pac. 936, 63 Am. & Eng. R. Cas. (N. S.) 794); *Scholl* v. *Belcher*, 63 Or. 310 (127 Pac. 968); *Richardson* v. *Portland Ry., L. & P. Co.*, 70 Or. 330 (141 Pac. 749); *Long* v. *Pacific Ry. & Nav. Co.*, 74 Or. 502 (144 Pac. 462, 145 Pac. 1068, L. R. A. 1915F, 1151); *Twitchell* v. *Thompson*, 78 Or. 285 (153 Pac. 45); *Emmons* v. *Southern Pac. Co.*, 97 Or. 263 (191 Pac. 333); *Marshall* v. *Olson*, 102 Or. 502 (202 Pac. 736). Indeed, the essence of the charge in the instant case is that the car was being operated at such speed that the defendants could not prevent colliding with the plaintiff. There was, therefore, no last clear chance for the defendant to avoid injuring the plaintiff. The reason of the rule about the last clear chance is that where the defend-

110 Or.—2

ant knows about the danger into which the negligence of the plaintiff has brought him and becomes aware of it in time to avoid the injury, the plaintiff's carelessness is laid out of the calculation and is no longer a factor contributing to the injury. It is superseded by the new and subsequent negligence or perchance willfulness of the defendants which becomes the proximate cause of the injury rendering the defendants liable. But the rule is thoroughly well settled requiring no citation of authorities that where the negligence of a plaintiff is an immediate contributing factor in the injury, he cannot recover. In *New York Transp. Co.* v. *O'Donnell,* 159 Fed. 659 (86 C. C. A. 527), it was said:

"A person may be excused from making a mistake when suddenly confronted with imminent danger provided—and only provided—he was without fault in getting into the dangerous situation."

In *Hall* v. *St. Louis-San Francisco Ry. Co.* (Mo.), 240 S. W. 175, a case where the plaintiff was injured while driving his automobile across a track, it was said:

"The tracks, as has often been said, constituted a warning of danger. It was incumbent upon appellant in this case to look from a place from which he could see. He had ample opportunity to do so. That an emergency or sudden peril arose does not excuse if such emergency resulted from appellant's negligence."

All through the cases on the question of sudden peril runs the element that the plaintiff cannot rely upon that doctrine where his own negligence is a direct and contributing cause for that peril. The cases cited by the plaintiff on that point either teach the doctrine directly or hold that under the circumstances there was no negligence of the plaintiff dis-

closed.   For instance, in *Vascacillas* v. *Southern Pac. Co.*, 247 Fed. 8 (159 C. C. A. 226), the plaintiff, driving his team of horses hitched to a loaded wagon, approached the tracks of the defendant company.   At that point the company maintained gates which ordinarily were closed to prevent vehicles and pedestrians from crossing while the trains were about to pass.   These gates were open at the time and the plaintiff, as well he might, took it as an invitation from the defendant to pass over its rails.   He had almost completed his passage when suddenly the gatekeeper, operating from a tower, lowered the gate almost in front of his horses, preventing his further passage and frightening his team.   He tried to force his horses over the gate but could not.   He jumped off the wagon and tried to hold them but, scared as they were by the noise of the oncoming train and the hissing of the steam, they became unmanageable and ran away, whereby he was injured.   This was properly held to be a case of sudden peril in which no element of negligence on the part of the plaintiff was present.

In *Robison* v. *Oregon R. R. & N. Co.*, 90 Or. 490, 512 (176 Pac. 594, 601), the plaintiff was riding in an automobile operated by another man.   At a crossing of the defendant's railway the car ran upon the track colliding with the train, killing the driver and injuring Robison who, it seems, jumped out of the automobile immediately prior to the actual impact.   Commenting on that feature, this language was used:

"The jury might have determined properly that, considering his confidence in the skill of the driver and influenced by his slackening the speed of the car, Robison had reason to believe that his companion would halt in a place of safety so that without his fault, the situation developed into one of sudden and

imminent danger, somewhat clouding his judgment, and that his effort to escape by jumping out of the automobile was, on his part, the exercise of reasonable diligence to escape injury.''

No case has been cited giving to the plaintiff the benefit of a sudden peril where his own carelessness created or contributed to that peril. In *Hazen* v. *Rutland R. Co.*, 89 Vt. 94 (94 Atl. 296), the court said:

''But it cannot be considered as open to question that the plaintiff was not in a position of peril when she got a fair view of the approaching train. When nearer the track, however, she whipped up the horse, using either a whip or lines, and made an attempt to cross the track before the approaching train, which she must have then known was approaching. There is no room for the inference that in driving from a place of safety on to the track she was free from contributory negligence.'' (Citing numerous precedents.)

It was plainly the duty of the plaintiff to withdraw from proximity to the train rather than to undertake to beat it over the crossing. Having started from a place of safety or at least from a point whence he easily and safely could have withdrawn, he cannot complain if the train won the race he began. Knowing, as he did, that the car was within forty or fifty feet of him and coming rapidly, he had the last clear chance to take one step back out of danger instead of going two or three steps farther into peril. He must abide by the result. He was guilty of contributory negligence as a matter of law and the nonsuit should have been granted. The judgment is reversed.

REVERSED.

McBride, C. J., and Bean and Rand, JJ., concur.